UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ouyeinc Ltd., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:22-cv-05187 ) ) |
| The Partnerships and Unincorporated Associations Identified on Schedule "A", | ) ) ) ) ) |
| Defendants. | ) |

## Complaint

Plaintiff Ouyeinc Ltd. ("Plaintiff" or "Ouyeinc"), by and through Plaintiff's undersigned counsel, hereby brings this Complaint against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and alleges as follows:

### Nature of the Action

**1.** Plaintiff files this Complaint against Defendants to combat online counterfeiters who trade upon Plaintiff's commercial reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed counterfeit products, including wax warmers, using counterfeit versions of Plaintiff's federally registered trademarks ("Counterfeit Pro-Wax100 Products").

**2.** Defendants create fully interactive, commercial Internet stores operating under at least the online marketplace accounts identified in **Schedule A,** attached hereto (collectively, "Defendant Online Stores"), that are intentionally designed to appear to be selling genuine Pro-Wax100 products, while actually selling Counterfeit Pro-Wax100 Products to unknowing consumers.

**3.** The Defendant Online Stores share identifiers, such as using identical or slightly modified (*e.g.*, carefully blurred) product photographs, and design elements and similarities of the

counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

4. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's federally registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Pro-Wax100 Products over the Internet.

5. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of Plaintiff's valuable trademark as a result of Defendants' actions and accordingly seeks injunctive and monetary relief.

**Jurisdiction and Venue**

6. This Court has original subject matter jurisdiction over the claims in this action pursuant to 15 U.S.C. § 1051, *et seq.*, and 28 U.S.C. §§ 1331, 1338(a)-(b).

7. This Court has jurisdiction over the claims herein arising under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because each Defendant directly targets its business activities toward consumers in the United States, including Illinois and this Judicial District. Defendants reach out to do business with residents of Illinois and this Judicial District by operating one or more commercial, fully interactive Defendant Online Stores through which

residents of Illinois and this Judicial District can purchase products being offered and sold under counterfeit versions of Plaintiff's federally registered trademarks. Each Defendant has targeted sales from residents of Illinois and this Judicial District by operating Defendant Online Store(s) that accept(s) payment in U.S. dollars and offers shipping to addresses within Illinois and this Judicial District for products offered with counterfeit versions of Plaintiff's federally registered trademark. Each Defendant has committed and is committing tortious acts in Illinois and this Judicial District, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois and in this Judicial District.

## Parties

9. Plaintiff, Ouyeinc Ltd., is a Colorado Corporation, with a principal place of business at 36 South 18th Avenue, Suite A, Brighton, CO 80601.

10. Plaintiff sells its Pro-Wax100-branded products throughout the United States, including Illinois.

11. Plaintiff specializes in the creation, manufacture, marketing, and licensing of products which display Plaintiff's internationally recognizable and federally registered trademarks (collectively, "Pro-Wax100 Products").

12. Plaintiff's Pro-Wax100 Products are sold throughout the United States, including Illinois and this Judicial District.

13. Plaintiff has invested substantial resources, time, money, and commercial efforts in order to establish the goodwill of Plaintiff's Pro-Wax100 Products and their federally registered trademarks. The success of Plaintiff's business enterprise is dependent and a result of Plaintiff's effort to market, promote, and advertise online via e-commerce.

14. The success of Plaintiff's Pro-Wax100 Products additionally stems from sales to consumers and interest that Plaintiff's consumers have generated.

15. As a result of the efforts of Plaintiff, the quality of Plaintiff's Pro-Wax100 Products, the promotional efforts for Plaintiff's products and designs, the members of the public have become familiar with Plaintiff's Products and federally registered trademarks and associate them exclusively with Plaintiff.

16. Plaintiff has made efforts to protect Plaintiff's interests in and to Plaintiff's federally registered trademarks. Plaintiff is the only business and/or individual authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing Plaintiff's federally registered trademarks, without the express written permission of Plaintiff. Plaintiff has not licensed or authorized Defendants to use Plaintiff's federally registered trademarks.

17. Defendants are individuals and business entities who own and/or operate one or more of the e-commerce stores under at least the aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff ("Seller Aliases"). On information and belief, Defendants reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial online marketplaces operating under the Seller Aliases. Each Defendant targets the United States, including Illinois and this Judicial District, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit Pro-Wax100 Products to consumers within the United States, including the State of Illinois and this Judicial District.

18. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for

sale, and sell products using counterfeit versions of Plaintiff's federally registered trademarks to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend this Complaint.

## Plaintiff's Business

19. Since 2010, Plaintiff has been engaged in the design, distribution, marketing, offer for sale, and sale of wax warmer products bearing Plaintiff's internationally recognizable and federally registered trademarks.

20. Plaintiff's efforts and accomplishments have made it a well-known and recognized name in the wax warmer and related product industries. Plaintiff has earned Plaintiff's reputation as a result of Plaintiff's commitment to providing the highest quality goods and products.

21. Ouyeninc Ltd. is the owner of all right, title, and interest in and to, *inter alia*, the trademarks set forth below:

| Reg. No. | Trademark | Goods |
|---|---|---|
| 6,033,871 | Pro-wax100 | IC 011 Electric warmers to melt scented wax tarts, electrical heating apparatus to melt and dispense wax, heating installations, and wax heater. |
| 6,033,730 | Pro-Wax100 | IC 011 Electric warmers to melt depilatory wax; Electric warmers to melt scented wax tarts. |
| 6,033,525 | Pro-Wax100 | IC 011 Electric warmers to melt scented wax tarts; Electrical heating apparatus to melt and dispense paraffin wax, hard wax. |

(hereinafter, collectively referred to as the "Pro-Wax100 Marks"), all with longstanding and prior use, covering a variety of goods and services, including without limitation electric warmers to melt

scented wax tarts, electric warmers to melt depilatory wax, electric heating apparatus to melt and dispense wax, heating installations, wax heaters, and other related goods and services. True and correct copies of the registration certificates of the Pro-Wax100 Marks are attached hereto as **Exhibit A**.

22. The Pro-Wax100 Marks have never been abandoned and are valid, subsisting, and in full force and effect. The registration for the Pro-Wax100 Marks constitutes *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Pro-Wax100 Marks pursuant to 15 U.S.C. § 1057(b).

23. Plaintiff has invested significant time, money, and other resources growing and protecting the Pro-Wax100 Marks.

24. Plaintiff's Pro-Wax100 Products have been commercially successful and are distributed and sold to consumers throughout the United States, including in Illinois, online and through ecommerce.

25. As a result of Plaintiff's efforts and accomplishments, Plaintiff has built substantial goodwill in and to the Pro-Wax100 Marks, which are well-known and valuable assets of Plaintiff.

26. Genuine Pro-Wax100 Products have become very popular, driven by Plaintiff's elevated quality standards and innovative designs. Genuine Pro-Wax100 Products are instantly recognizable among the consuming public and the Pro-Wax100 Marks identify, in the United States and around the world, high quality wax warmer products offered by Plaintiff.

27. Genuine Pro-Wax100 Products have been promoted and sold by Plaintiff, including in internet e-commerce. Sales of the Pro-Wax100 products have been significant, and Plaintiff's e-commerce website features proprietary content, images, and designs exclusive to the Pro-Wax100 brand.

28. As a result of Plaintiff's long-standing use of its Pro-Wax100 Marks in association with Plaintiff's high-quality products, extensive sales, and significant marketing activities, the Pro-Wax100 Marks have achieved widespread acceptance and recognition among the consuming public and throughout U.S. interstate commerce.

29. The Pro-Wax100 Marks are exclusive to Plaintiff and appear clearly on all Pro-Wax100 product packaging and related advertisements. Plaintiff has expended substantial time, money, and other resources to develop, advertise, promote, and protect the Pro-Wax100 Marks. Accordingly, products bearing the Pro-Wax100 Marks are widely recognized and exclusively associated by the consuming public and the industry as being high-quality wax warmers sourced from Plaintiff.

30. The Pro-Wax100 Marks are distinctive when used in association with the sale of Plaintiff's wax warmer products, signifying to the purchaser that the products come exclusively from Plaintiff and are made to Plaintiff's material specifications.

**Defendants' Unlawful Conduct**

31. Plaintiff has identified numerous fully interactive, ecommerce stores, including those operating under the Seller Aliases, which are or recently were offering for sale and/or selling Counterfeit Pro-Wax100 Products to consumers in this judicial district and throughout the United States.

32. Marketplaces like Amazon, iOffer, eBay, Wish, Joom, Vova, and AliExpress, among others, allow merchants to quickly "set up shop" and flood the market with unauthorized goods which displace actual sales manufacturers would otherwise enjoy.

33. It has been estimated that e-commerce intellectual property infringement costs merchants in the U.S. alone nearly $41 billion[1] with Department of Homeland Security seizures of infringing goods increasing more than tenfold between 2000 and 2018.[2]

34. U.S. Customs and Border Protection ("CBP") reported that for Fiscal Year 2019, 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large cargo containers) and 85% of CBP seizures originated from mainland China, Singapore, and Hong Kong. Footwear and sporting goods, specifically, represented 17% of all seized products and the value of seized goods increased 11% to more than $1.5 billion.[3]

35. Legislation was recently introduced in the U.S. Senate that would allow CBP to seize articles that infringe design patents, thus closing a loophole currently exploited by infringers.[4]

36. Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

---

[1] The National Bureau of Asian Research, The Report of the Commission on the Theft of American Intellectual Property, at 9, Pub. The Commission on the Theft of American Intellectual Property 2017, available at http://www.ipcommission.org/report/IP_Commission_Report_Update_2017.pdf.

[2] U.S. Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, January 24, 2020, available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

[3] U.S. Customs and Border Protection Office of Trade, Intellectual Property Rights Fiscal Year 2019 Seizure Statistics, available at, https://www.cbp.gov/sites/default/files/assets/documents/2020-Sep/FY%202019%20IPR%20Statistics%20Book%20%28Final%29.pdf.

[4] Press Release, U.S. Senator Thom Tillis, Tillis, Coons, Cassidy & Hirono Introduce Bipartisan Legislation to Seize Counterfeit Products and Protect American Consumers and Businesses (Dec. 5, 2019), available at https://www.tillis.senate.gov/2019/12/tillis-coons-cassidy-hirono-introduce-bipartisan-legislationto-seize-counterfeit-products-and-protect-american-consumers-and-businesses.

37. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."5

38. DHS has observed that "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts.6

39. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated.7

40. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringement]."8

41. The success of Plaintiff's Pro-Wax100 Marks has resulted in substantial counterfeiting activity and other attempts to misappropriate Plaintiff's proprietary rights. Accordingly, Plaintiff has policed the use of Plaintiff's Pro-Wax100 Marks and has identified many online product listings on marketplaces such as Amazon.com, eBay.com, and other Internet locations offering for sale and, on information and belief, selling Counterfeit Pro-Wax100 Products to consumers throughout the United States, including this Judicial District.

---

5 Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).
6 *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, at p. 22.
7 Id., at p. 39.
8 *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. at 186-187.

42. Defendants collectively employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing ecommerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images which make it very difficult for consumers to distinguish such stores from those of an authorized retailer. On information and belief, Plaintiff has not licensed or authorized Defendants to use the Pro-Wax100 Marks, and on information and belief none of the Defendants are authorized retailers of genuine Pro-Wax100 Products.

43. On information and belief, Defendants engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to their respective ecommerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

44. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Pro-Wax100 Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being halted.

45. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating

under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and product imagery.

46. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com and WeChat chat rooms and through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

47. Counterfeiters like Defendants will typically ship counterfeit products in small quantities via international mail to mitigate detection by U.S. Customs and Border Protection. Further, they will typically operate multiple credit card merchant accounts (*e.g.*, PayPal) or use layers of payment gateways to forestall their cashflow being interrupted due to trademark enforcement efforts. On information and belief, Defendants utilize offshore bank accounts and routinely move funds from PayPal and other U.S.-based merchant accounts (*e.g.*, within China) outside the jurisdiction of this Court.

48. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Pro-Wax100 Marks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Pro-Wax100 Products into the United States and into Illinois over the Internet.

49. Each Defendant offers shipping to the United States, including, specifically Illinois and this Judicial District. On information and belief, each Defendant has sold Counterfeit Pro-Wax100 Products into the United States and the state of Illinois.

50. Defendants' unauthorized use of the Pro-Wax100 Marks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Pro-Wax100 Products, including with respect to the sale of such products into the United States, including specifically Illinois and this Judicial District, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**Count I - Trademark Infringement and Counterfeiting (15 U.S.C. § 1114)**

51. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 50.

52. Plaintiff's trademark infringement claims against Defendants are based on Defendants' unauthorized use in commerce of counterfeit imitations of the federally registered Pro-Wax100 Marks in connection with the advertising, distribution, offering for sale, and sale of infringing goods.

53. The Pro-Wax100 Marks are distinctive marks, and consumers have come to expect superior quality from products advertised, distributed, offered, or sold under the Pro-Wax100 Marks.

54. Defendants have advertised, distributed, offered to sell, sold, and are still advertising, distributing, offering to sell, and selling products using counterfeit reproductions of the Pro-Wax100 Marks, including the Counterfeit Pro-Wax100 Products, without Plaintiff's permission.

55. Plaintiff is the exclusive owner of the Pro-Wax100 Marks. Plaintiff's registrations for the Pro-Wax100 Marks are in full force and effect.

56. Upon information and belief, Defendants are aware and have knowledge of Plaintiff's rights in the Pro-Wax100 Marks and are willfully infringing the Pro-Wax100 Marks and intentionally using counterfeit reproductions thereof.

57. Defendants' willful, intentional, and unauthorized use of the Pro-Wax100 Marks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Pro-Wax100 Products among the general public.

58. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. § 1114.

59. Plaintiff has no adequate remedy at law and will suffer irreparable harm to Plaintiff's reputation and goodwill of Plaintiff's well-known Pro-Wax100 Marks if Defendants' actions are not enjoined.

60. Defendants' wrongful advertisement, offering to sell, and sale of the Counterfeit Pro-Wax100 Products have directly and proximately caused injuries and damage to Plaintiff.

**Count II - False Designation of Origin, Passing Off, and Unfair Competition,**

**15 U.S.C. § 1125(a))**

61. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 60.

1. The Pro-Wax100 Marks are distinctive trademarks.

62. Defendants' advertising, distribution, offering for sale, and sale of the Counterfeit Pro-Wax100 has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Pro-Wax100 Products by Plaintiff.

63. By using the Pro-Wax100 Marks in association with the advertising, distribution, offering for sale, and sale of the Counterfeit Pro-Wax100 Products, Defendants create a false designation of origin and a misleading representation of fact as to the true origin and sponsorship of the Counterfeit Pro-Wax100 Products.

64. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Pro-Wax100 Products to the general public involves the willful use of counterfeit marks and is a willful violation of 15 U.S.C. § 1125.

65. Plaintiff has no adequate remedy at law and will suffer irreparable harm to Plaintiff's reputation and goodwill of Plaintiff's well-known Pro-Wax100 Marks if Defendants' actions are not enjoined.

**Count III - Violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510, *et seq.*)**

66. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 65.

67. Defendants have engaged in acts which violate Illinois law including, without limitation: passing off their Counterfeit Pro-Wax100 Products as those of Plaintiff; causing a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to the affiliation, connection, or association with genuine Pro-Wax100 Products; representing that their products have Plaintiff's approval when they do not; and engaging in other conduct as described herein which creates a likelihood of confusion or misunderstanding among the public.

68. Defendants' foregoing acts constitute willful violations of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

69. Plaintiff has no adequate remedy at law and will suffer irreparable harm to Plaintiff's reputation and goodwill of Plaintiff's well-known Pro-Wax100 Marks if Defendants' actions are not enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Ouyeinc Ltd., prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the Pro-Wax100 Marks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Pro-Wax100 product or is not authorized by Plaintiff to be sold in connection with the Pro-Wax100 Marks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Pro-Wax100 product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Pro-Wax100 Marks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Pro-Wax100 Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing the Pro-Wax100 Marks and damaging Plaintiff's goodwill;

  e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Pro-Wax100 Marks, or any reproductions, counterfeit copies, or colorable imitations thereof;

  f. using, linking to, transferring, selling, exercising control over, or otherwise owning a business that is being used to sell products or inventory not authorized by Plaintiff which bear the Pro-Wax100 Marks;

  g. operating, facilitating and/or hosting websites which are involved with the distribution, marketing, advertising, offering for sale, or sell products or inventory not authorized by Plaintiff which bear the Pro-Wax100 Marks;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon, eBay, and Wish, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing, and Yahoo shall:

  a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Pro-Wax100 Marks;

  b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods using without authorization the Pro-Wax100 Marks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Pro-Wax100 Marks be increased by a sum not exceeding three times the amount thereof pursuant to 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for the unauthorized use of each Pro-Wax100 Mark for each registered good or service;

5) That Plaintiff be awarded Plaintiff's reasonable attorneys' fees and costs as available pursuant to 15 U.S.C. § 1117, and other applicable law; and

6) Award any and all other relief that this Court deems just and proper.

Dated: September 23, 2022

Respectfully submitted,

/s/Ilya G. Zlatkin
Ilya G. Zlatkin (ARDC No. 6314344)
Zlatkin Wong LLP
4245 N. Knox Ave.
Chicago, IL 60641
ilya@zlatkinwong.com
Ph. (312) 809-8022
Fax (312) 809-6918

*Counsel for Plaintiff*