**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Ouyeinc Ltd., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  1:22-cv-05187 |
| | ) | |
| v. | ) | Dist. Judge Jeremy C. Daniel |
| | ) | |
| The Partnerships and | ) | |
| Unincorporated Associations | ) | |
| Identified on Schedule "A", | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT ARA DERMARDEROSIAN'S MOTION FOR SANCTIONS AND MOTION TO FIND CASE EXCEPTIONAL**

## TABLE OF CONTENTS

RELEVANT BACKGROUND ...................................................................................................1

ARGUMENT ...........................................................................................................................2

I.   Defendant's Motion for Sanctions Must Be Denied.............................................................2

   A.   Defendant did not file a separate motion for sanctions ......................................................3

   B.   Neither Plaintiff nor Plaintiff's counsel engaged in any sanctionable conduct..................4

      1.   *Plaintiff cannot be sanctioned for seeking to enforce a judgment*..................................5

      2.   *Plaintiff did not breach any duty to inquire as to Defendant's location* ........................6

      3.   *Plaintiff did not breach any duty to inquire as to the first sale doctrine*......................10

      4.   *Plaintiff provided notice in accordance with all of the Court's orders*........................12

   C.   Defendant made misrepresentations in support of the Motion for Sanctions...................13

   D.   Defendant filed the Motion for Sanctions for improper purposes .....................................14

II.   The Court Should Award Plaintiff Attorneys' Fees Pursuant to Rule 11(c)(2) ...............16

III.   This Case Is Not Exceptional Under the Lanham Act.......................................................17

CONCLUSION.........................................................................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Atlas IP, LLC v. Exelon Corp.*, No. 15 C 10746, 2016 WL 3958887 (N.D. Ill. July 22, 2016)....11

*Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639 (7th Cir. 2019) .........................11

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255 (2017).................................................................................................................................7

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) ...............................11

*Christian Dior Couture, S.A. v. Liu, et al.*, No. 15 C 6324, Dkt. 92 (N.D. Ill. Nov. 17, 2015).......7

*Cooney v. Casady*, 735 F.3d 514 (7th Cir. 2013) ...........................................................................3

*Divane v. Krull Elec. Co.*, 200 F.3d 1020 (7th Cir. 1999)...............................................................4

*E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175 (S.D.N.Y. 2008) .................................................16

*Great Am. Ins. Co. v. Marubeni Citizen-Cincom, Inc.*, No. 19-CV-03895, 2020 WL 3058081 (N.D. Ill. June 9, 2020).........................................................................................................10

*Greeley Pub. Co. v. Hergert*, 233 F.R.D. 607 (D. Colo. 2006)....................................................14

*Jackson v. McKay-Davis Funeral Home*, No. 07-C-1037, 2012 WL 5423739 (E.D. Wis. Nov. 6, 2012)....................................................................................................................................16

*Lefkovitz v. Wagner*, 219 F.R.D. 592 (N.D. Ill. 2004), *aff'd*, 395 F.3d 773 (7th Cir. 2005)...........2

*LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC*, 988 F.3d 962 (7th Cir. 2021) .................17

*Loc. 106, Serv. Emps. Int'l Union v. Homewood Mem'l Gardens, Inc.*, 838 F.2d 958 (7th Cir. 1988)....................................................................................................................................16

*Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989) .............................................3

*Maui Jim, Inc. v. SmartBuy Guru Enters.*, 459 F. Supp. 3d 1058 (N.D. Ill. 2020) .................11, 18

*Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923 (7th Cir. 2004).......................................3

*Meyer Intell. Props. Ltd. v. Bodum USA, Inc.*, No. 06 C 6329, 2014 WL 3724797 (N.D. Ill. July 28, 2014) ......................................................................................................................5

*MFB Fertility Inc. v. Easy Healthcare Corp.*, No. 20-CV-07833, 2023 WL 2683469 (N.D. Ill.

Mar. 29, 2023) ........................................................................................................................3

*NBA Properties, Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 577 (2023) ..................................................................................................................................7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545 (2014) ...............................17

*Ouyeinc Ltd. v. NaturalRays-Official, et al.*, No. 20-CV-3591, Dkt. 112 (N.D. Ill. Apr. 6, 2022) ....................................................................................................................................16

*Pado, Inc. v. SG Trademark Holding Co. LLC*, No. CV2001565CJCPVCX, 2020 WL 1445720 (C.D. Cal. Mar. 24, 2020) ......................................................................................................9

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003)......................8

*Roadget Bus. Pte. Ltd. v. Individuals, et al.*, No. 24 CV 607, 2024 WL 3338942 (N.D. Ill. July 9, 2024) .......................................................................................................................................7

*Royce v. Michael R. Needle P.C.*, 950 F.3d 939 (7th Cir. 2020) ...................................................3

*Rush v. McDonald's Corp.*, 966 F.2d 1104 (7th Cir. 1992) .........................................................15

*Safety Socket LLC v. Relli Tech., Inc.*, No. 18-CV-6670, 2023 WL 3455117 (N.D. Ill. May 15, 2023) ..........................................................................................................................11, 17, 18

*Schueller v. Experian Info. Sols.*, No. 1:11-CV-0955-MCA-LFG, 2013 WL 12084733 (D.N.M. Mar. 27, 2013), *aff'd sub nom. Schueller v. Wells Fargo & Co.*, 559 F. App'x 733 (10th Cir. 2014) ......................................................................................................................................14

*Six v. IQ Data Int'l Inc.*, No. CV-22-00203-PHX-MTL, 2023 WL 12037427 (D. Ariz. May 18, 2023), *aff'd*, No. 23-15887, 2025 WL 586559 (9th Cir. Feb. 24, 2025) ..................................14

*Slep-Tone Ent. Corp. v. Am.'s Bar & Grill, LLC*, No. 13 C 8526, 2014 WL 4057442 (N.D. Ill. Aug. 15, 2014) ......................................................................................................................17

*Steel Warehouse of Wisc., Inc. v. Leach*, 154 F.3d 712 (7th Cir. 1998).........................................8

*Tommy Hilfiger Licensing, LLC v. P'ships, et al.*, No. 20 C 7477, Dkt. 46 (N.D. Ill. Mar. 24, 2021) ........................................................................................................................................7

*Toyota Motor Sales, USA, Inc. v. P'ships, et al.*, No. 24-cv-09401, Dkt. 27 (N.D. Ill. Nov. 18, 2024) ........................................................................................................................................9

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ................................................................5

*Viahart LLC v. P'ships, et al.*, No. 19 CV 8181, 2022 WL 1004412 (N.D. Ill. Apr. 4, 2022) .....10

*Wang v. P'ships, et al.*, No. 21 CV 1664, 2022 WL 2463043 (N.D. Ill. July 6, 2022)..................8

*Witt v. Westfield Acceptance Corp.*, No. IP 00-1001-C S/H, 2002 WL 826372 (S.D. Ind. Mar. 25, 2002).........................................................................................................................5

*Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831 (N.D. Ill. 2023) ........................4, 5

## Rules

FED. R. CIV. P. 11(b)..........................................................................................................3

FED. R. CIV. P. 11(c)(2)................................................................................................3, 16

FED. R. CIV. P. 12(b)........................................................................................................10

FED. R. CIV. P. 8..............................................................................................................8

Plaintiff Ouyeinc Ltd. ("Plaintiff"), by and through its undersigned counsel, submits this response in opposition to Defendant Ara Dermarderosian's ("Defendant") Motion for Sanctions and Motion to Find Case Exceptional [Dkt. 102] ("Combined Motion"). Plaintiff's response below addresses both portions of the Combined Motion – the motion for sanctions ("Motion for Sanctions") and the motion to find the case exceptional ("Motion to Find Exceptional").

## RELEVANT BACKGROUND

Plaintiff filed its complaint in September 2022, alleging trademark infringement and counterfeiting (as well as related claims under the Lanham Act and Illinois state law) by various defendants, including Defendant. [Dkt. 1; Dkt. 4]. Over the course of late 2022 and the first half of 2023, Plaintiff and Plaintiff's representatives proceeded to follow a standard pattern for Schedule A cases that have proliferated in this District. Plaintiff obtained a temporary restraining order, including dynamics with respect to electronic service of process [Dkt. 15; Dkt. 16] ("TRO"). Plaintiff then moved to convert the TRO into a preliminary injunction. [ECF. No. 20]. Prior to granting the preliminary injunction, the Court instructed Plaintiff to provide notice to defendants of the pending motion. [Dkt. 21]. Plaintiff's counsel proceeded to effect electronic service, including by emailing Defendant, providing the Court's minute entry, summons, complaint, and motion for preliminary injunction. [*See* Declaration of Ilya G. Zlatkin, ¶ 3, Ex. 2; Dkt. 22; Dkt. 37]. Defendant failed to appear, so the Court entered the preliminary injunction. [Dkt. 72, Dkt. 73]. Plaintiff then moved for entry of default and default judgment, and the Court instructed Plaintiff to provide notice of the motion to defaulting defendants. [*See* Dkt. 74; Dkt. 78]. Plaintiff complied. [*See* Zlatkin Decl., ¶ 5, Ex. 3]. In due course, the Court entered an order granting Plaintiff's motion for entry of default and default judgment against many defendants, including Defendant [Dkt. 90] ("Default Order").

1

Plaintiff then sought to enforce the Default Order by emailing it to various platforms. [Zlatkin Decl., ¶ 6]. In early 2025, eBay evidently proceeded to freeze defaulted defendants' accounts, including the account of Defendant. Defendant contacted Plaintiff's counsel directly in March 2025. [Zlatkin Decl., ¶ 7, Ex. 4]. Subsequently, Defendant's counsel contacted Plaintiff's counsel, and the two engaged in correspondence relating to the matter. [*See* Zlatkin Decl., ¶ 8, Ex. 5]. Unsatisfied with Plaintiff's position in continued enforcement of the Default Order, Defendant's counsel proceeded to threaten to file a motion for sanctions against Plaintiff and Plaintiff's counsel unless Plaintiff or Plaintiff's counsel paid Defendant $5,000. [*Id*. (Lockyer email to Zlatkin on May 20, 2025)]. Plaintiff rejected the offer. [*Id*. (Zlatkin email to Lockyer on May 21, 2025)]. After a 21-day period, Defendant's counsel again contacted Plaintiff's counsel, offering to forgo filing the Motion for Sanctions in exchange for a payment of $20,000. [*Id*. (Lockyer email to Zlatkin on June 11, 2025)]. After Plaintiff's counsel again rejected the proposal, Defendant filed a motion to vacate the Default Order [Dkt. 101] ("Motion to Vacate"), along with the Combined Motion. Plaintiff now responds to the Combined Motion herein, with a separate response brief to the Motion to Vacate. [Dkt. 109].

## ARGUMENT

### I.    Defendant's Motion for Sanctions Must Be Denied

"Rule 11 sanctions are only to be granted sparingly and should not be imposed lightly." *Lefkovitz v. Wagner*, 219 F.R.D. 592, 592–93 (N.D. Ill. 2004), *aff'd*, 395 F.3d 773 (7th Cir. 2005) (citations omitted). "Rule 11 requires attorneys or unrepresented parties to certify that filings are not being presented for any improper purpose, that the legal contentions asserted in the filing are not frivolous, and that factual contentions have or are likely to have evidentiary support." *MFB Fertility Inc. v. Easy Healthcare Corp.*, No. 20-CV-07833, 2023 WL 2683469, at *5 (N.D. Ill.

2

Mar. 29, 2023) (citing FED. R. CIV. P. 11(b)). Rule 11's purpose is to deter baseless filings. *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020). Whether to impose Rule 11 sanctions is within the sound judgment of the district court. *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013). Rule 11 embodies both an objective and a subjective standard, prohibiting both "frivolousness on the objective side" and "bad faith on the subjective side." *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 930 (7th Cir. 1989). Whether counsel conducted an adequate pre-filing investigation, and "whether a legal position is far *enough* off the mark to be 'frivolous,'" are "fact-bound" and "fact-intensive" questions. *Id*. at 931–34 (emphasis in original). As the Seventh Circuit has explained after an *en banc* hearing:

> [Rule 11's] focus is ex ante (what should have been done before filing) rather than ex post (how things turned out). How much investigation is justified (i.e., "reasonable") in light of the costs depends on the circumstances of the case, and Rule 11 does not allow an award of sanctions just because things went poorly after an investigation that was adequate in light of what was known (and how much time was available) before the paper was filed.

*Id*. at 932. "Unlike the traditional fee-shifting statute, Rule 11 focuses on inputs rather than outputs, conduct rather than result." *Id*. For the many reasons discussed below, Defendant's Motion for Sanctions should be denied on both procedural and substantive grounds. Further, in filing the Combined Motion, Defendant himself commits multiple sanctionable offenses.[1]

### A.     Defendant did not file a separate motion for sanctions

As an initial matter, the Motion for Sanctions must be denied on procedural grounds. "A motion for sanctions must be made separately from any other motion." FED. R. CIV. P. 11(c)(2).

---

[1] Defendant also argues that the Court should, as an alternative to Rule 11, use the Court's inherent powers to sanction Plaintiff. [Dkt. 102-1 at 5]. Plaintiff acknowledges that the Court has inherent powers to impose sanctions. *See Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004). For the same reasons as with respect to Rule 11, however, Plaintiff maintains that neither Plaintiff nor its representatives engaged in any sanctionable conduct, while Defendant or his representatives, in fact, have exposed themselves to sanctions by filing their Combined Motion.

"Permitting a motion for sanctions to be made in conjunction with another motion constitutes an abuse of discretion." *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999). Defendant filed the instant Combined Motion, joining the Motion for Sanctions with the Motion to Find Exceptional. As a result, Defendant has not complied with the procedural requirements of a Rule 11 motion for sanctions, and the Motion for Sanctions must be denied for that reason alone.

### B.  Neither Plaintiff nor Plaintiff's counsel engaged in any sanctionable conduct

Defendant alleges that "Plaintiff violated Rule 11(b)(3) by making factual contentions without evidentiary support and without conducting a reasonable inquiry into Mr. Dermarderosian's identity or conduct." [Dkt. 102-1 at 3]. In the process, Defendant conflates what was reasonable for Plaintiff and Plaintiff's counsel to have done in 2022 and 2023 (when Plaintiff's filings were submitted) with the more recent aftereffects of Plaintiff's enforcement of the Default Order. This approach contravenes the Rule 11 standard.

In making his arguments as to Plaintiff's purported lack of reasonable inquiry, Defendant attempts to draw false parallels with cases in which sanctions were awarded. One such decision is *Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831 (N.D. Ill. 2023). Several crucial differences exist between *Xped* and this case. First, the sanctions in the *Xped* case were imposed for disregard of information provided by defendant <u>before</u> plaintiff's misrepresentations to the court. *See id*. at 848. Second, the *Xped* plaintiff misrepresented that a defendant was a foreign entity despite "clear evidence to the contrary" at the time of the statements. *Id*. at 855. Third, in *Xped*, the merits of plaintiff's case against the defendant in question were grossly lacking. *See id*. at 856–57 (noting plaintiff's testimony that about 50 percent of the named defendants, including the movant, had actually removed plaintiff's trademark from the items listed online). Fourth, the sanctioned attorney in *Xped* had falsely represented to the court that he had caused defendants to

4

be informed of the litigation, even though he never sent correspondences to the defendants directly. *See id*. at 857–58.

In stark contrast, here: (1) Plaintiff sought to enforce a judgment of the Court and any negative impacts felt by Defendant were a result of such enforcement; (2) there was no clear evidence as to Defendant's identity or that Defendant was not a foreign national; (3) Plaintiff did not misrepresent the merits of Plaintiff's claims, and Defendant's newly presented evidence does not impact the obligations Plaintiff had when submitting the relevant pleadings; and (4) Plaintiff presents clear evidence that Plaintiff informed Defendant of this suit long before Defendant's alleged initial discovery.

### 1. *Plaintiff cannot be sanctioned for seeking to enforce a judgment*

Defendant asks the Court to impose sanctions on Plaintiff based on Plaintiff's enforcement of the Default Order in accordance with its terms. "When the process of adjudication is complete, all judgments are handed over to the litigant . . . to execute. Steps which the litigant . . . lawfully takes for their enforcement are a vindication rather than a usurpation of the court's power." *United States v. Morton Salt Co.*, 338 U.S. 632, 641 (1950). "Urging a Court to enforce previously issued rulings is certainly not misconduct" and "seeking to enforce previous Court rulings in one's favor is neither unethical nor unprofessional." *Meyer Intell. Props. Ltd. v. Bodum USA, Inc.*, No. 06 C 6329, 2014 WL 3724797, at *2 (N.D. Ill. July 28, 2014); *see also*, *Witt v. Westfield Acceptance Corp.*, No. IP 00-1001-C S/H, 2002 WL 826372, at *2 (S.D. Ind. Mar. 25, 2002) ("Court judgments are not intended to be meaningless pieces of paper. A party who wins a judgment is entitled to collect upon it or to enforce compliance with it. Efforts to collect or enforce a facially valid judgment are not invitations to relitigate the merits.").

While Plaintiff had indeed secured a TRO and preliminary injunction against many defendants, including against Defendant, evidently Defendant did not suffer any account freeze at those stages, else Defendant presumably would have appeared earlier. Instead, having secured the Default Order by complying with all of the Court's rules, instructions, and orders, Plaintiff, through counsel, emailed the Default Order to various platforms, including eBay. [Zlatkin Decl., ¶ 6]. Regardless of how the Court ultimately rules on the Defendant's Motion to Vacate, [*see* Dkt. 101], as discussed in more detail below, none of Plaintiff's actions in securing the Default Order are sanctionable. Plaintiff was entitled to proceed to enforce the Default Order, and for as long as the Default Order is valid, Plaintiff is entitled to continue doing so. FED. R. CIV. P. 60(c)(2) (a motion to vacate default "does not affect the judgment's finality or suspend its operation.").

To be clear, Plaintiff does not in any way dispute that Plaintiff has an obligation to abide by Rule 11 with respect to all future submissions to the Court. Plaintiff's representatives are certainly responsible for ensuring reasonable inquiry into newly acquired information that may be incorporated into future statements. With respect to Plaintiff's earlier filings, however, Plaintiff and its representatives cannot be subject to sanctions under Rule 11 for information that was brought to their attention in 2025. This more recent information cannot in any way impact what may have been reasonable for Plaintiff's representatives to have done in 2022 and 2023.

2. ***Plaintiff did not breach any duty to inquire as to Defendant's location***

Defendant states that "Plaintiff's counsel submitted declarations asserting foreign service and proper jurisdiction, despite presumably knowing Mr. Dermarderosian resided in California." [Dkt. 102-1 at 4]. According to Defendant, Plaintiff and its representatives "ignored clear evidence that Mr. Dermarderosian had a meritorious defense." [*Id.*]. Elaborating as to this purported

"meritorious defense," Defendant then asserts that "venue was not proper in this District" and that Plaintiff "made no effort to justify proceeding against a California resident here." [*Id*.].

The extent of Defendant's allegations as to why jurisdiction and venue are inappropriate in this District are that Defendant lives in California and operates his business there. [*Id*.; Dkt. 101-1 ¶ 2]. Those are not, however, conditions that automatically negate the existence of personal jurisdiction (and, by extension, proper venue). Even general jurisdiction can be found against nonresidents. *See, generally*, *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 267–68 (2017) (explaining that a court could validly exercise personal jurisdiction over nonresidents' claims in situations where it possesses "general jurisdiction" over the defendant). Perhaps more importantly, Seventh Circuit cases "make clear [] that physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state." *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 577 (2023).

The evidence supplied by Defendant (which had also been provided by Plaintiff to the Court) shows that Defendant was, at a minimum, willing to ship the product throughout the United States, including specifically to Illinois. [Dkt. 104; *see also*, Dkt. 10-6 at 34–39]. Courts in this District have found specific jurisdiction to exist based on an offer to ship to the forum, without any purchase of the infringing product. *See, e.g.*, *Roadget Bus. Pte. Ltd. v. Individuals, et al.*, No. 24 CV 607, 2024 WL 3338942, at *4 (N.D. Ill. July 9, 2024); *Tommy Hilfiger Licensing, LLC v. P'ships, et al.*, No. 20 C 7477, Dkt. 46 (N.D. Ill. Mar. 24, 2021); *Christian Dior Couture, S.A. v. Liu, et al.*, No. 15 C 6324, Dkt. 92, at *7 (N.D. Ill. Nov. 17, 2015).

Like all plaintiffs alleging trademark infringement, Schedule A plaintiffs are not required to plead facts with particularity and are not under any heightened pleading standard beyond the

requirements of Rule 8. *See Wang v. P'ships, et al.*, No. 21 CV 1664, 2022 WL 2463043, at *3 (N.D. Ill. July 6, 2022) (KENDALL, J.). A plaintiff is not required to set out facts alleging personal jurisdiction in the complaint. *Steel Warehouse of Wisc., Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). Meanwhile, when the Court relies on written materials in its jurisdictional determination, without an evidentiary hearing, the plaintiff is only required to make a prima facie showing of personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

Plaintiff's complaint contained allegations regarding venue and jurisdiction. [*See* Dkt. 1 at 2–3, ¶ 8]. In support of the motion for TRO, Plaintiff's counsel attested to what he knew from his experience with online counterfeiting and what merchants like the listed Schedule A defendants were underlined likely to do [Dkt. 8, ¶¶ 7–9], while Plaintiff's business representative, Rongji Ge, attested as to the visual inspection he conducted and his conclusions therefrom. [Dkt. 9]. Plaintiff's business representative also submitted screenshots as to each of the defendants' storefronts, including as to Defendant. [*See* Dkt. 10-6 at 34–39 (containing screenshot evidence specific to Defendant); *see also*, Dkt. 104 (same)]. Plaintiff's counsel effected electronic service of process, as permitted by the Court. [*See* Dkt. 15; Dkt. 22; Dkt. 37; Zlatkin Decl., ¶¶ 2–3, Ex. 1–2]. When moving for default judgment, with the benefit of information gathered from platforms, Plaintiff's counsel accurately indicated that defaulting defendants are "**primarily** domiciled in China, Israel, and Korea." [Dkt. 75-2 ¶ 3 (emphasis added)]. Plaintiff's counsel similarly complied with all orders of the Court in providing defaulting defendants, including Defendant, with notice of the pending motion for default. [*See* Zlatkin Decl., ¶¶ 4–5, Ex. 3].

Yes, many of the pleadings involved are similar to those made by plaintiffs in other Schedule A cases and often refer to defendants in the aggregate, but nothing about the assertions

8

is inaccurate. Based on the information available to Plaintiff and Plaintiff's counsel in 2022 and 2023, these assertions were all reasonable to make at the time. Insofar as the vagueness of the statements is concerned, as this Court has recently commented about the inefficiency of Schedule A suits, "[t]he Court must still review infringement contentions as to each defendant" and "evaluat[e] the plaintiff's evidence as to each defendant." *Toyota Motor Sales, USA, Inc. v. P'ships, et al.*, No. 24-cv-09401, Dkt. 27, at *4 (N.D. Ill. Nov. 18, 2024) (DANIEL, J.). Having received Plaintiff's submissions in 2022 and 2023, the Court presumably reviewed the materials, including the evidence specifically relating to Defendant, and at multiple stages of the process found it sufficient to issue a TRO, preliminary injunction, and default judgment.

Defendant nevertheless asserts that Plaintiff should have determined that Defendant was not a foreign counterfeiter – not based on any address viewable on Defendant's eBay page but rather based solely on "Item Location." [*See* Dkt. 102-1 at 6; Dkt. 104]. The location from where a product is being shipped to the consumer cannot be de facto equated to the location of the merchant.[2] Foreign counterfeiters often engage in drop shipping, a practice through which they use a U.S.-based fulfillment center to ship the product to the consumer. No meaningful conclusions about the location of an ecommerce merchant can ever be drawn solely from the location of the product. *See Pado, Inc. v. SG Trademark Holding Co. LLC*, No. CV2001565CJCPVCX, 2020 WL 1445720, at *4–5 (C.D. Cal. Mar. 24, 2020) (granting motion to dismiss for lack of personal jurisdiction in California despite non-California merchant's use of California-based fulfillment centers); *Viahart LLC v. P'ships, et al.*, No. 19 CV 8181, 2022 WL 1004412, at *4

---

[2] Defendant's counsel's own filing serves to support this point. Specifically, Attorney Benjamin Lockyer attests under penalties of perjury that Defendant is a resident of San Fernando, California. [Dkt. 101-2 ¶ 5]. He then proceeds to declare that Defendant's eBay listing "clearly showed that the seller was based in Burbank, California." [*Id*. ¶ 9]. Meanwhile, the screenshots from the listing actually show the "item location" as being Glendale, California. [*See* Dkt. 102-1 at 6; Dkt. 104].

(N.D. Ill. Apr. 4, 2022) (noting foreign counterfeiter's use of fulfillment centers to store products across the United States and declining to find personal jurisdiction in Illinois because the counterfeiter's contacts with the Illinois-based fulfillment center are not enough to infer that the foreign counterfeiter is at home in Illinois).[3]

For the sake of argument, even if it is assumed that (1) the Court does not have personal jurisdiction over Defendant, (2) venue was improper, or (3) service was not effective against Defendant, Defendant wishes to equate potential success on a Rule 12(b) motion with success on a motion for sanctions under Rule 11. Defendant would have the Court impose sanctions on everyone who ever loses a Rule 12(b) motion. That is not an appropriate conclusion. *See, e.g.*, *Great Am. Ins. Co. v. Marubeni Citizen-Cincom, Inc.*, No. 19-CV-03895, 2020 WL 3058081, at *3 (N.D. Ill. June 9, 2020) ("Though clearly mistaken, the Court does not believe that Plaintiff alleged personal jurisdiction in bad faith so as to warrant Rule 11 sanctions.").

### 3.      *Plaintiff did not breach any duty to inquire as to the first sale doctrine*

Seeking to attack the merits of Plaintiff's claims, Defendant states in a conclusory manner that the "product at issue was not counterfeit." [Dkt. 102-1 at 4]. In support of this allegation, Defendant proceeds with a non sequitur that the product "was lawfully acquired through a legitimate U.S.-based auction and resold in compliance with the First Sale Doctrine." [*Id.*]. In Plaintiff's response below to Defendant's Motion to Find Exceptional (as well as the Motion to Vacate), Plaintiff addresses in more detail why the first sale doctrine is not a meritorious defense

---

[3] Defendant also asks the Court to infer misconduct by Plaintiff's representatives as a result of another defendant, Michelle Padilla, having indicated that she is a California resident who purportedly experienced a similar outcome as Defendant. The Court has already denied Ms. Padilla's motion to set aside default. [*See* Dkt. 98]. Plaintiff rejects the notion that it would be appropriate to draw any negative inferences against Plaintiff from Ms. Padilla's situation.

in this case, and why the evidence presented by Defendant actually helps Plaintiff's position. For purposes of the Motion for Sanctions, however, the first sale doctrine is a red herring.

Whether Defendant's assertions end up being deemed a potential meritorious defense does not impact the analysis of whether Plaintiff's representatives comported with Rule 11. The first sale doctrine is an affirmative defense, and the burden for proving it rests with Defendant. *Safety Socket LLC v. Relli Tech., Inc.*, No. 18-CV-6670, 2023 WL 3455117, at *6 (N.D. Ill. May 15, 2023); *see also, Maui Jim, Inc. v. SmartBuy Guru Enters.*, 459 F. Supp. 3d 1058, 1081–82 (N.D. Ill. 2020) (concluding that fairness requires placing burden on the party asserting the defense to show that first sale doctrine applies). A complaint is not insufficient simply because it fails to anticipate an affirmative defense. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) (as defendants bear the burden on affirmative defenses, it is inappropriate to penalize the plaintiff for failing to anticipate such defenses in a complaint); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("The mere presence of a potential affirmative defense does not render the claim for relief invalid."). Plaintiffs also do not need to account for any non-pleaded affirmative defenses as the litigation progresses. *See Atlas IP, LLC v. Exelon Corp.*, No. 15 C 10746, 2016 WL 3958887, at *8 (N.D. Ill. July 22, 2016) (denying sanctions under 28 U.S.C. § 1927 because "just as there is no need to anticipate or attempt to defuse potential defenses as to possible affirmative defenses, there is no obligation to anticipate ordinary defenses to liability after having stated a claim.") (internal quotation marks and citations omitted). As soon as Plaintiff's visual inspection determined that the products offered for sale by Defendant bore Plaintiff's trademark and were counterfeit, that was sufficient for pleading Plaintiff's claims and proceeding with the suit against Defendant. Defendant's assertions of the

11

first sale doctrine while the Default Order is in effect does not impose any new obligations upon Plaintiff.

### 4. *Plaintiff provided notice in accordance with all of the Court's orders*

Finally, in addition to contesting the validity of service, Defendant asserts that his funds and eBay store were seized "without any notice or opportunity to respond." [Dkt. 102-1 at 5]. Given that this suit dealt with ecommerce, the Court deemed it appropriate to allow for electronic service of process. [Dkt. 15; Dkt. 16 at 6 ¶ 8]. As elaborated upon in Plaintiff's response to the Motion to Vacate, such method of service would be appropriate even if Defendant was indeed based in California. [*See* Dkt. 109 at 4–6].

While Plaintiff cannot speak definitively as to what Defendant may or may not have actually seen in Defendant's own email inbox, Plaintiff's counsel can absolutely confirm that emails containing the complaint, summons, motion for preliminary injunction, and motion for entry of default and default judgment, along with the Court's minute entries indicating opposition deadlines, were sent to Defendant's email address. [Zlatkin Decl., ¶¶ 2–5, Ex. 1, Ex. 2, Ex. 3]. Plaintiff's counsel did not receive any bounce-back email stating that such messages had not been delivered to Defendant's inbox. [*Id*. ¶ 3, ¶ 5]. As Defendant's own subsequent correspondence to Plaintiff confirms, Defendant had access to the email account to which these multiple notifications were sent. [*Compare id*., Ex. 2 (listing garniara@gmail.com as a recipient); *and id*., Ex. 3 (same); *with id*., Ex. 4 (email sent by Defendant from the garniara@gmail.com address); *see also* Dkt. 101-1 at 3 (showing garniara@gmail.com as Defendant's email address for purposes of e-signature)]. Plaintiff cannot reasonably be held responsible for Defendant's failure to monitor the email inbox that Defendant himself had chosen to associate with his eBay account, nor for Defendant's

potential choice to ignore emails that he may have received in association with his ecommerce business.

### C.      Defendant made misrepresentations in support of the Motion for Sanctions

While arguing that Plaintiff and Plaintiff's counsel did not conduct a reasonable inquiry, Defendant and Defendant's counsel make multiple verifiable false statements within the Motion for Sanctions and its supporting declarations. First, Defendant attests under penalties of perjury that he did not find out about the case until "late April 2025," [ECF. No. 101-1 ¶ 6; *see also*, Dkt. 102-1 at 2], conveniently omitting that Defendant actually emailed Plaintiff about the case in March 2025. [*See* Zlatkin Decl., ¶ 7, Ex. 4]. In addition, Defendant declares that he discovered in late April 2025 that his PayPal account was frozen. [Dkt. 101-1 ¶ 6; Dkt. 102-1 at 2]. To the extent that Defendant asserts that his PayPal account was recently frozen as a result of this suit, that too is almost certainly false. Given that the Default Order was never sent to PayPal by Plaintiff's counsel, [Zlatkin Decl., ¶ 6], it would have been impossible for Defendant's PayPal account to be frozen as a result of Plaintiff's efforts to enforce the Default Order. If Defendant's PayPal indeed had been frozen as part of this litigation, that could have occurred solely as a result of Plaintiff's counsel having sent the TRO to PayPal in November 2022. [*See id*.]. It is unfathomable that Defendant would not have realized that Defendant's PayPal account was frozen for well over two years until April 2025. Either Defendant's PayPal account was never frozen, or Defendant chose to ignore this lawsuit (and the funds purportedly frozen in Defendant's PayPal account) since 2022.

In turn, Defendant's counsel seemingly misstates not just the location of Defendant's business, [*see* Dkt. 101-2, ¶ 9 (declaring that Defendant "was based in Burbank, California")], but also the restrained amount, as had been provided by Plaintiff's counsel. [*Compare id*. ¶ 6 (declaring that Plaintiff's counsel had identified $1,240.36 as having been seized); *with id*., Ex. A

13

at 1 (email from Plaintiff's counsel identifying $1,758.27 as having been frozen)]. Even more egregiously, however, Defendant's counsel also misrepresents that Plaintiff demanded a payment of $20,000 from Defendant. [*Compare id.* ¶ 6 (declaring that Plaintiff's counsel "declined to return the funds or dismiss the case absent the payment of $20,000"); *with id.*, Ex. A at 1 (email from Plaintiff's counsel stating that Plaintiff "would be willing to engage in good faith negotiations to consider a satisfaction of judgment at an amount less than the full $20,000")].

When informed by Plaintiff's counsel that Defendant and Defendant's counsel had "gone on record with verifiable falsehoods," Defendant's counsel doubled down that they "stand by the factual accuracy of the materials submitted." [Zlatkin Decl., Ex. 5 (correspondence from June 12, 2025)]. At least one of two things is true: either (1) Defendant and Defendant's counsel are attempting to defraud the Court at Plaintiff's expense, or (2) they are not exercising a reasonable level of inquiry in their own filings – the very misconduct of which they are accusing Plaintiff and Plaintiff's counsel. Either scenario is a violation of Rule 11 in its own right by Defendant or Defendant's counsel (or both of them).

### D.     Defendant filed the Motion for Sanctions for improper purposes

Federal courts throughout the country have found that the leveraging of a motion for sanctions to extract a settlement violates Rule 11. *See, e.g.*, *Six v. IQ Data Int'l Inc.*, No. CV-22-00203-PHX-MTL, 2023 WL 12037427, at *2 (D. Ariz. May 18, 2023) (awarding sanctions against movant because "the use of Rule 11 to lever a settlement drives a wedge between a lawyer and his client. This is so because the threat of Rule 11 sanctions thrusts the lawyer into a self-preservation dilemma: settle your client's case or face personal sanctions"), *aff'd*, No. 23-15887, 2025 WL 586559 (9th Cir. Feb. 24, 2025); *Schueller v. Experian Info. Sols.*, No. 1:11-CV-0955-MCA-LFG, 2013 WL 12084733, at *2 (D.N.M. Mar. 27, 2013) ("the filing of Rule 11 motions,

when done for an ulterior purpose of harassing, increasing costs, or as a trial tactic to compel a settlement, is itself a violation of Rule 11, and sanctions, including substantial monetary sanctions, can be imposed"), *aff'd sub nom. Schueller v. Wells Fargo & Co.*, 559 F. App'x 733 (10th Cir. 2014); *Greeley Pub. Co. v. Hergert*, 233 F.R.D. 607, 611 (D. Colo. 2006) ("A Rule 11 motion for sanctions should never be employed as a means to achieve some tactical advantage."). As the Seventh Circuit has determined, district courts "should not tolerate turning the Rule 11 motion into a method of intimidation." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1123 (7th Cir. 1992).

Defendant improperly sought to leverage the filing of a motion for sanctions to extract a payment from Plaintiff. Specifically, Defendant's own filing in support of the Motion for Sanctions shows that Defendant's counsel threatened to file the Motion for Sanctions unless Plaintiff or Plaintiff's counsel paid Defendant a sum of $5,000. [*See* Dkt. 106 at 4 (email from Lockyer to Zlatkin on May 20, 2025)]. Furthermore, after termination of the 21-day safe harbor period, Defendant's counsel proceeded to contact Plaintiff's counsel again with a proposition to forgo filing the Motion for Sanctions upon a payment of $20,000. [Zlatkin Decl., Ex. 5 (email from Lockyer to Zlatkin on June 11, 2025)]. If Defendant truly believed that Plaintiff or Plaintiff's counsel had engaged in sanctionable conduct, then Defendant should not have conditioned the filing of the Motion for Sanctions on anything other than termination of the allegedly sanctionable conduct. Defendant also should not have waited until the expiration of the mandated Rule 11 safe harbor to file the Motion to Vacate. After all, nothing during that period would have changed whether there was any good cause to set aside default or whether Defendant had any meritorious defense. Meanwhile, waiting an extra three weeks only serves to reinforce that Defendant did not take quick action to set aside the default. As the correspondence between the parties' counsel

15

conveys, Defendant was more interested in trying to extort money from Plaintiff through the threat of sanctions.[4]

## II. The Court Should Award Plaintiff Attorneys' Fees Pursuant to Rule 11(c)(2)

Movants for sanctions under Rule 11 are themselves subject to requirements of the Rule. *See Loc. 106, Serv. Emps. Int'l Union v. Homewood Mem'l Gardens, Inc.*, 838 F.2d 958, 961 (7th Cir. 1988) (affirming district court's *sua sponte* award of sanctions against a filer of a motion for sanctions). "The nonmoving party need not file a cross-motion to receive fees as the court can award reasonable expenses to the prevailing party, including attorney's fees, incurred in presenting or opposing the motion." *Jackson v. McKay-Davis Funeral Home*, No. 07-C-1037, 2012 WL 5423739, at *4 (E.D. Wis. Nov. 6, 2012) (quoting *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008)); *see also* FED. R. CIV. P. 11(c)(2) (allowing a court discretion to award fees to the prevailing party).

As discussed above, not only did Defendant file the Motion for Sanctions without merit, but Defendant did so for an improper purpose and submitted multiple verifiable falsehoods. When informed by Plaintiff's counsel that the filings in support of the Motion for Sanctions contained false statements, Defendant's counsel chose to double down. Upon a denial of the Motion for Sanctions, Plaintiff would be deemed the prevailing party with respect to the Motion for Sanctions. The Court should exercise its discretion under Rule 11(c)(2) to award Plaintiff its reasonable

---

[4] Within the Combined Motion, Defendant argues that Plaintiff's alleged misconduct is part of a broader pattern, citing a prior Schedule A case in which a defendant filed a counterclaim against Plaintiff. [Dkt. 102-1 at 7]. Plaintiff denies having engaged in any misconduct in prior cases, same as in this case. Of particular note, the asserted counterclaim was not adjudicated in any way after Plaintiff settled with the defendant in question. *See* Plaintiff's Motion to Close Case, *Ouyeinc Ltd. v. NaturalRays-Official, et al.*, No. 20-CV-3591, Dkt. 112 (N.D. Ill. Apr. 6, 2022). While Plaintiff may be inclined to explore settlement of this case with Defendant (and certainly without any payment from Plaintiff to Defendant), seeing the mischaracterization of Plaintiff's conduct from prior litigation by Defendant's counsel makes it untenable for Plaintiff to settle with Defendant without an adjudication of Defendant's meritless Combined Motion, lest a settlement be misinterpreted as a green light to cast aspersions at Plaintiff and its representatives in the future.

attorneys' fees associated with responding to the Motion for Sanctions, which turned out to be not just meritless, but was also based on lies and was used in an attempt to extort a settlement from Plaintiff.

## III.     This Case Is Not Exceptional Under the Lanham Act

As part of Defendant's Combined Motion, Defendant includes the Motion to Find Exceptional, in which he bizarrely seeks to label this case as "exceptional," despite having previously stated that this case "followed the 'Schedule A' template." [Dkt. 102-1 at 2, 5–6]. As the Seventh Circuit has determined, "a case can be 'exceptional' if the court determines, under the totality of the circumstances, that it 'stands out from others with respect to [1] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated.'" *LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC*, 988 F.3d 962, 967 (7th Cir. 2021) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 (2014)). If Plaintiff's filings mirror those of typical Schedule A cases (and considering that Plaintiff did not violate Rule 11 in submitting those filings, as discussed above), then this case cannot be labeled as standing out from others.

Defendant rehashes the same arguments regarding jurisdiction, venue, service, and first sale doctrine that Defendant makes with respect to the Motion for Sanctions. [Dkt. 102-1 at 6]. As addressed above, the procedural arguments do not hold water. Upon inspection of the evidence provided by Defendant in support of the first sale doctrine, the same can be said about Defendant's argument on the merits.

The first sale doctrine does not apply when the product being resold is itself not genuine. *Safety Socket*, 2023 WL 3455117, at *6 ("A key to the first sale doctrine is that the products are 'genuine goods.'"); *Slep-Tone Ent. Corp. v. Am.'s Bar & Grill, LLC*, No. 13 C 8526,

17

2014 WL 4057442, at *4 (N.D. Ill. Aug. 15, 2014) ("There is nothing to support . . . allow[ing] a broad expansion of the limited first sale doctrine to include copied, unoriginal items merely because they may 'pass' for the original item."). "Trademarked goods are not considered genuine goods until the trademark owner first authorizes the sale of those goods." *Maui Jim*, 459 F. Supp. 3d at 1081. As addressed above, the first sale doctrine's status as an affirmative defense places the burden of proof on Defendant. To meet this burden, Defendant "must present evidence sufficient to withstand summary judgment." *Safety Socket*, 2023 WL 3455117, at *6 (internal quotation marks omitted).

As a prime example of the frivolous nature of Defendant's Combined Motion, Defendant avoids acknowledging the limitations of the first sale doctrine, despite the fact that Defendant had been informed of them in correspondence between the parties' counsel. [*See* Zlatkin Decl., Ex. 5 (Zlatkin emails to Lockyer on April 24, 2025, and June 12, 2025, informing Defendant's counsel that the first sale doctrine only applies for resale of genuine products)]. Instead, for evidence, Defendant attaches a receipt made out to Defendant's supposed business partner, Ara Thomas, from a California-based auction company.[5] [Dkt. 101-1 ¶ 4]. In other words, <u>Defendant does not present any evidence – nor could he – that he purchased the product from Plaintiff or any authorized manufacturer</u>. The entire underlying premise of anticounterfeiting enforcement is that counterfeit products are regularly sold within the United States. Defendant wants the Court to punish Plaintiff for refusing to take Defendant at his word, *i.e.*, that a product purchased by someone other than Defendant at some third-party auction surely couldn't have been a knockoff!

---

[5] Despite the fact that Defendant himself was apparently not the purchaser at the third-party auction in question, Defendant nevertheless refers to "my purchase of 2 Boxes of Pro Wax Warmers." [Dkt. 101-1 ¶ 4].

Defendant cannot come close to meeting his burden. It is not enough for the Defendant to show that Defendant himself did not manufacture a counterfeit good. Rather, Defendant would have to be able to withstand summary judgment that Plaintiff or Plaintiff's authorized manufacturer actually made the product offered for resale by Defendant. If anything, the evidence provided by Defendant serves to reinforce the merits of Plaintiff's claims. At all times, Plaintiff has had a strong litigating position, and nothing about Plaintiff's approach to this litigation has been unreasonable. The only thing that "stands out" about this case is Defendant's bad faith in bringing the Combined Motion.

## **CONCLUSION**

The Court should deny the entirety of Defendant's Combined Motion. Neither Plaintiff nor Plaintiff's counsel engaged in any sanctionable conduct. Meanwhile, Defendant and Defendant's counsel have violated Rule 11 themselves by seeking to leverage Rule 11 for an improper purpose, and through the submission of verifiable falsehoods in the process. Plaintiff requests that the Court award Plaintiff its reasonable costs, including attorney's fees associated with the Motion for Sanctions, under Rule 11(c)(2). Similarly, the Court should deny Defendant's Motion to Find Exceptional.

Dated: July 2, 2025

/s/ Ilya G. Zlatkin
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
ilya@zce.law
(312) 809-8022

*Counsel for Plaintiff*

19