**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Ouyeinc Ltd., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-05187 |
| | ) | |
| v. | ) | Dist. Judge Jeremy C. Daniel |
| | ) | |
| The Partnerships and Unincorporated | ) | |
| Associations Identified on | ) | |
| Schedule "A", | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE AS TO TIMELINESS AND THE COURT'S AUTHORITY TO MODIFY PERMANENT INJUNCTIVE RELIEF

For the reasons discussed in open court on July 10, 2025, Plaintiff Ouyeinc Ltd. ("Plaintiff"), by and through its counsel, hereby requests that the Court deny Defendant Michelle Padilla's ("Ms. Padilla") motion to reconsider. Per the Court's minute entry order setting a briefing schedule after the hearing [Dkt. 116], this response also addresses the Plaintiff's own timeliness and the Court's authority to modify the permanent injunction entered in this case.

### I. Ms. Padilla's Motion to Reconsider Must Be Denied as Untimely

On January 3, 2024, the Court entered a final default judgment order, including against Ms. Padilla – earlier identified as Defendant No. 107, itsyours4keeps ("Default Judgment Order"). [Dkt. 90]. On April 17, 2025, appearing *pro se*, Ms. Padilla filed a request to dismiss judgment, seeking dismissal of the Default Judgment Order against her ("Request for Dismissal of Judgment"). [Dkt. 94]. On June 3, 2025, the Court issued an order denying the Request for Dismissal of Judgment ("Order Denying Request"). [Dkt. 98]. As the Court correctly stated in its Order Denying Request, "[r]elief from a final judgment may be granted pursuant to Rule 60(b) under exceptional circumstances." [Dkt. 98 at 2]. Based on the statements of Ms. Padilla's counsel in open court, Ms. Padilla engaged counsel on or around June 11, 2025. [*See also*, Dkt. 110-6 at 22 (correspondence

from Lockyer to Zlatkin dated June 11, 2025, indicating that Lockyer had been retained by Ms. Padilla to file a motion to reconsider]. On July 4, 2025, Ms. Padilla, through counsel, filed a motion seeking reconsideration of the Order Denying Request [Dkt. 113] ("Motion to Reconsider").

It is evident from Ms. Padilla's Motion to Reconsider that Ms. Padilla's counsel perceived the Order Denying Request as an interlocutory order that is subject to reconsideration under Federal Rule of Civil Procedure 54(b). [*See* Dkt. 113 at 2–3, 8 (discussing the standard of review as being subject to FED. R. CIV. P. 54(b) with respect to revision of interlocutory orders)]. That is not correct, however. "[A] party who does not prevail on a Rule 60(b) motion 'may challenge that judgment with a motion to alter or amend under Rule 59(e).'" *Martinez v. City of Chicago*, 499 F.3d 721, 727 (7th Cir. 2007) (quoting *Inryco, Inc. v. Metropolitan Engineering Co., Inc.*, 708 F.2d 1225, 1232 (7th Cir. 1983)). Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). This is a strict, jurisdictional deadline, and the Federal Rules of Civil Procedure prohibit a court from extending it. *See* FED. R. CIV. P. 6(b)(2). Even Plaintiff and Plaintiff's counsel do not have authority to waive Ms. Padilla's Rule 59(e) deadline. *See Dolan v. United States*, 560 U.S. 605, 610 (2010) ("The expiration of a 'jurisdictional' deadline prevents the court from permitting or taking the action to which the statute attached the deadline. The prohibition is absolute. <u>The parties cannot waive it, nor can a court extend that deadline for equitable reasons</u>.") (emphasis added).

Given that the Order Denying Request was entered on June 3, 2025, the 28-day deadline for filing of the Motion to Reconsider was July 1, 2025. Despite having been retained weeks prior, Ms. Padilla's counsel filed the Motion to Reconsider on July 4, 2025. This filing was untimely, and the Court has no discretion to extend the time available for the filing of the Motion to Reconsider. *See Hope v. United States*, 43 F.3d 1140, 1143 (7th Cir. 1994) ("the district court may not extend the time within which a party may move to alter or amend a judgment under Rule 59(e).").

Furthermore, a "Rule 59(e) motion challenges only the Rule 60(b) judgment, not the validity of the underlying judgment." *Martinez*, 499 F.3d at 727 (internal quotation marks omitted). As a result, even if the Motion to Reconsider was timely, only the Court's reasoning in the Order Denying Request would be subject to review, not the propriety of the Default Judgment Order.

While Plaintiff certainly believes that there are substantive reasons why the Motion to Reconsider should be denied, Plaintiff requests that the Court deny the Motion to Reconsider without further substantive briefing, so as to preserve the parties' and the Court's resources. To the extent that the Court believes that further argumentation is required for the denial of the Motion to Reconsider (and as discussed in open court on July 10, 2025), Plaintiff reserves the right to present substantive arguments for why both the Order Denying Request and the Default Judgment Order were properly granted.

## II.     Plaintiff Reasonably Delayed Judgment Execution

At the hearing on July 10, 2025, the Court expressed concerns about the timeliness of Plaintiff's actions after securing the Default Judgment Order. For the reasons discussed below, Plaintiff and Plaintiff's counsel were completely within their rights to seek to maximize collection on the judgment within their preferred timelines, especially after the underlying trademark infringement in question had been mitigated through preliminary injunctive relief.

Rule 69 of the Federal Rules of Civil Procedure governs execution of judgments. Per the rule, "[u]nless otherwise governed by a federal statute, the procedure for executing a money judgment 'must accord with the procedure of the state where the court is located.'" *Suraleb, Inc. v. Prod. Ass'n "Minsk Tractor Works," Republic of Belarus*, No. 06 C 3496, 2013 WL 7045925, at *2 (N.D. Ill. Nov. 8, 2013) (quoting FED. R. CIV. P. 69(a)(1)), *report and recommendation adopted in part*, No. 06 C 3496, 2014 WL 238300 (N.D. Ill. Jan. 21, 2014). "Under Illinois law, a judgment is good for seven years, but it can be revived within twenty years of the date of judgment." *Suraleb*,

2014 WL 238300, at *1 (internal citation omitted). In fact, a judgment creditor may be allowed to continue collection efforts for the effective duration of the judgment, even in situations in which a case is subsequently dismissed. *See Acme Cont'l Credit Union v. Lyte*, 2015 IL App (1st) 142650-U, at *1 ¶ 1 (holding that a "[t]rial court's order dismissing the case for want of prosecution three years after judgment was entered does not invalidate the underlying judgment or the judgment creditor's ability to continue attempting to collect the judgment."). Further, under long-standing Illinois law, in a case with multiple judgment-debtors, a plaintiff "may pursue any or all of the judgment debtors ***by any and all processes recognized by the law*** until he obtains satisfaction." *Tandrup v. Sampsell*, 234 Ill. 526, 533, 85 N.E. 331 (1908) (emphasis added). Although creditors are prohibited from engaging in outrageous or unconscionable conduct, they "are given substantial latitude as to the pressure they can exert in order to collect payment to which they are legally entitled," even when their methods "result in some inconvenience, embarrassment, or annoyance to the debtor." *McGrath v. Fahey*, 126 Ill. 2d 78, 88–89, 533 N.E.2d 806 (1988).

As Plaintiff's counsel explained in open court, having properly notified Ms. Padilla as to Plaintiff's motions for preliminary injunctive relief and default judgment, Plaintiff's counsel did not email the Default Judgment Order to any of the defaulting defendants. (Plaintiff's counsel did publish the Default Judgment Order underline immediately on the special-purpose webpage established for the case on Plaintiff's counsel's website – a fact that Plaintiff's counsel forgot to mention in open court. The link to such website had been provided previously to both Ms. Padilla and all online platforms.) Further, as disclosed by Plaintiff's counsel, the Default Judgment Order was not sent to eBay until early 2025. These are tactical decisions that Plaintiff and its representatives were entitled to make.

Under Illinois law, a defaulted party is not entitled to notice of the existence of a default judgment once it is granted, and a failure to notify the defendant of a default judgment does not render it void. *Am. Consulting Ass'n, Inc. v. Spencer*, 100 Ill. App. 3d 917, 920, 427 N.E.2d 579 (1981)

(collecting cases). Meanwhile, under Rule 71 of the Federal Rules of Civil Procedure, when an order such as the Default Judgment Order may be enforced against a nonparty such as an online marketplace platform, "the procedure for enforcing the order is the same as for a party." FED. R. CIV. P. 71. Therefore, just like with defaulted parties themselves, Illinois law applied, Plaintiff was not required to provide notice to eBay of the entry of default judgment, and the absence of notice to eBay did not impair the default judgment.

In response to the Court's question as to why Plaintiff's counsel chose this tact, Plaintiff's counsel explained that this approach was thought to maximize the funds potentially available for recovery. Plaintiff's counsel also subsequently clarified that, regardless of any tactical choices, certain information had to be gathered prior to the submission of the Default Judgment Order to the platforms, which served as a partial reason for the delay. The Court expressed concern that Plaintiff's counsel had set a "trap," to which characterization Plaintiff's counsel objected. The Court then analogized the conduct of Plaintiff's counsel to entrapment in the criminal law context.

Respectfully, the comparison of a delay in collection efforts under the Default Judgment Order to "setting a trap" or "entrapment" of any type is inapposite. Unlike with the scenario described by the Court, no delays in collection efforts in any way increase Ms. Padilla's liability. The Court had already ruled on the merits of the case and had deemed a statutory damages award of $20,000 for each defaulting defendant, including Ms. Padilla, to be an appropriate amount. Nothing about the timeliness of Plaintiff's collection efforts changes the rationale for why the Court deemed that award to be appropriate in the first place, nor does it change the maximum amount that the Plaintiff is entitled to collect. Indeed, the Default Judgment Order does not even contain any discussion of post-judgment interest being awarded – the only potential impact on the amount *owed* as a function of the passage of time. For as long as the Default Judgment Order is effective against Ms. Padilla (and any

other defaulted defendants), no delays in collection efforts in any way affect the amount of the monetary damages that Ms. Padilla is subject to pay.

Under Illinois law, delay in execution of a valid default judgment "does not by itself render the default unfair or unconscionable," even if such delays eliminate a defendant's ability to claim an easier standard to set aside default. *See Sidenstricker v. Dobbs*, 110 Ill. App. 3d 620, 624, 442 N.E.2d 924 (1982) (affirming denial of petition to vacate default, even though judgment creditor's execution began after expiration of the period during which a lower standard for vacatur may have applied). "If delay alone vitiated a default, then most [motions to set aside default under a higher standard] would be granted, which is not the case." *Id.*

Insofar as the concept of entrapment even remotely may be analogized within intellectual property law, that would arguably relate to a plaintiff's intentional delays in mitigating an infringement through pre-litigation notice of infringement, allowing higher <u>actual damages</u> to accrue prior to initiation of litigation. As the Fifth Circuit determined in the context of the Copyright Act, a failure to mitigate does not preclude recovery of statutory damages. *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 275 (5th Cir. 2020). The $20,000-per-defendant award is a statutory damage award and therefore is not impacted by any duty or failure to mitigate. Regardless, <u>Plaintiff did not actually fail to mitigate the infringement of Plaintiff's trademarks</u>. Preliminary injunctive relief issued earlier in the litigation had succeeded in eliminating the infringing listings. Any delay in execution of the judgment did not result in a reinstatement of the infringing listings. Therefore, no possible impact as to the liability of defaulting defendants, including that of Ms. Padilla, could have occurred through delays in executing the Default Judgment Order.

Ultimately, it is Plaintiff's position that Plaintiff and its counsel were entitled to employ any legal means to maximize collection on the judgment. "When the process of adjudication is complete, all judgments are handed over to the litigant . . . to execute. Steps which the litigant . . . lawfully takes

for their enforcement are a vindication rather than a usurpation of the court's power." *United States v. Morton Salt Co.*, 338 U.S. 632, 641 (1950). "Urging a Court to enforce previously issued rulings is certainly not misconduct" and "seeking to enforce previous Court rulings in one's favor is neither unethical nor unprofessional." *Meyer Intell. Props. Ltd. v. Bodum USA, Inc.*, No. 06 C 6329, 2014 WL 3724797, at *2 (N.D. Ill. July 28, 2014); *see also*, *Witt v. Westfield Acceptance Corp.*, No. IP 00-1001-C S/H, 2002 WL 826372, at *2 (S.D. Ind. Mar. 25, 2002) ("A party who wins a judgment is entitled to collect upon it or to enforce compliance with it. Efforts to collect or enforce a facially valid judgment are not invitations to relitigate the merits."). Plaintiff respectfully requests that the Court acknowledge that neither Plaintiff nor Plaintiff's counsel engaged in any untoward conduct, but rather simply sought to maximize chances of collecting amounts that the Court had deemed appropriate to award. To the extent that the Court deems Plaintiff's approach to contravene conduct that the Court would deem appropriate in similar circumstances, Plaintiff is certainly amenable to facilitate a result that the Court would consider more equitable, as discussed in more detail below.

### III.    While the Court Likely Does Not Have *Sua Sponte* Authority to Modify the Injunctive Relief Granted in this Case, Plaintiff Is Willing to Facilitate an Equitable Result

At the hearing on July 10, 2025, the Court raised concerns as to the broad-sweeping language of the Default Judgment Order and indicated an inclination to modify the injunctive relief granted in the order.[1] The Court instructed Plaintiff to address the Court's authority to modify the permanent

---

[1] It is worth noting that, prior to being reassigned to Judge Daniel, this case was initially assigned to Judge Pacold. [*See* Dkt. 79]. At all times relevant to this case, Judge Pacold had a standing order with respect to Schedule A cases. Specifically, Judge Pacold provided templates for temporary restraining orders, preliminary injunctions, and default judgment orders. Like all Schedule A plaintiffs in cases assigned to Judge Pacold, Plaintiff was required to provide a proposed order along with a redline comparing the proposed order to Judge Pacold's template. [*See, e.g.*, Dkt. 13 (instructing plaintiff to submit a "track changes version showing any differences between plaintiff's proposed order and the court's template order.")]. The proposed default judgment order, for the most part, corresponded to Judge Pacold's template, and was sent to Judge Pacold's proposed order inbox prior to reassignment of the case. When instructed to provide a proposed order by Judge Daniel, [Dkt. 87], the same proposed order was resubmitted to Judge Daniel for entry of default judgment, which subsequently resulted in the entry of the Default Judgment Order.

injunction entered in this case. While Plaintiff has not been able to identify any cases directly on point, as set forth below, Plaintiff believes that there is a workaround to effect the Court's preferences via the Federal Rules of Civil Procedure – at a minimum, through Plaintiff's good-faith cooperation.

A court may *sua sponte* set aside entries of default for good cause under Rule 55(c), but the same cannot be said definitively for final default judgments. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008) ("Without deciding whether a district court could set aside a default judgment *sua sponte,* we believe that the district court had the authority to set aside *sua sponte* an entry of default against [defaulted party] for good cause."). Rule 55(c) is also clear, however, that final default judgment may only be set aside under Rule 60(b). Plaintiff has been unable to identify any applicable authority that would enable the Court to alter a final judgment without a party's motion under Rule 60(b).

This seems to be reinforced by Rule 60(a), which, unlike Rule 60(b), expressly allows the Court, of its own initiative, to "correct a clerical mistake or a mistake arising from oversight or omission" in a judgment pursuant to Rule 60(a). *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (brackets in original); *Premier Elec. Const. Co. v. National Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 364 (7th Cir. 1987) ("Under the Rules Enabling Act, 28 U.S.C. § 2072, the Rules of Civil Procedure have the effect of statutes). To the extent that the Court wishes to characterize the permanent injunctive relief granted in the Default Judgment Order as a mistake arising from an oversight, Plaintiff does not believe that Rule 60(a) would be an appropriate method for changing substantive portions of a final judgment order. *See Illiana Surgery & Med. Ctr. LLC v. Hartford Fire Ins. Co.*, No. 2:07 CV 3, 2012 WL 3264981, at *2 (N.D. Ind. Aug. 9, 2012) ("Rule 60(a) is intended to make the judgment or record speak the truth and is not a

vehicle to make substantive changes to the record."); *Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 146 (1958) ("the power to correct inadvertent ministerial errors may not be used as a guise for changing previous decisions because the wisdom of those decisions appears doubtful").

Ms. Padilla's initial Request to Dismiss the Judgment was correctly construed as a motion under Rule 60(b). Any substantive argumentation aside, as discussed above, Ms. Padilla's Motion to Reconsider cannot be granted due to untimeliness of the filing, and there is nothing that the Court or either of the parties can do to remedy that. Ms. Padilla cannot bring successive motions under Rule 59(e) to reconsider the denial of her initial Rule 60(b) motion. *Ammons v. Cook Cnty.*, 424 F. App'x 556, 556 (7th Cir. 2011) ("Successive motions for reconsideration are not allowed, and this motion was filed outside the time for a proper Rule 59 motion."). Additionally, Ms. Padilla cannot bring a second motion under Rule 60(b). *See In re Ring*, 266 F. App'x 492, 493 (7th Cir. 2008) ("A litigant cannot present arguments in a motion under Rule 60(b) that could have been made to the district court in a timely motion for reconsideration.").

Rule 60, however, "does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; (2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or (3) set aside a judgment for fraud on the court." FED. R. CIV. P. 60(d). As set forth below, only the first of these options may be applicable here.

As an initial matter, Plaintiff avers that Rule 60(d)(2) would be inappropriate to implement, as, in addition to other requirements under 28 U.S.C. § 1655, that subsection would not be available to defendants who were personally notified of an action. The Court has already acknowledged and found unavailing Ms. Padilla's statements that she was "never formally notified" about this action. [Dkt. 98 at 2]. Regardless of any questions concerning the timeliness of execution of the Default Judgment Order, Plaintiff had already provided notice <u>of the action</u> to Ms. Padilla via email. [*See*

Dkt. 97 at 3–4; Dkt. 97-3; Dkt. 97-4]. Plaintiff concedes it's possible that, rather than willfully disregarding emails from Plaintiff's counsel, Ms. Padilla chose not to open or read emails received from Plaintiff's counsel. Even under the 60(b)(1) standard that was no longer available to Ms. Padilla, however, "[f]ailure to check one's email is 'neglect,' but it is not 'excusable.'" *Thomas v. Bridgeview Bank Grp.*, 716 F. App'x 537, 538 (7th Cir. 2018). Regardless of the Court's questions around propriety of electronic service of process as to Ms. Padilla, notice of an action (as may be differentiated from valid service of process) can still be provided via email. *See id.* Plaintiff would object to any attempts to apply Rule 60(d)(2).

Naturally, Plaintiff also would take issue with any attempt whatsoever to characterize Plaintiff's or its representatives' conduct as "fraud on the court" under Rule 60(d)(3). Because a motion to vacate a judgment on account of "fraud on the court" has no deadline, the concept must be "defined narrowly lest it become an open sesame to collateral attacks." *In re Golf 255, Inc.*, 652 F.3d 806, 809 (7th Cir. 2011) (internal quotation marks omitted). As the Seventh Circuit has explained, "fraud on the court" is reserved for "the kind of fraud that ordinarily couldn't be discovered, despite diligent inquiry, within a year, and in some cases within many years—cases in which there are no grounds for suspicion and the fraud comes to light serendipitously." *Id.* In addition, fraud on the court involves "conduct that might be thought to corrupt the judicial process itself, as where a party bribes a judge or inserts bogus documents into the record." *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1997). Fraud on the court must be proved by clear and convincing evidence. *See, e.g.*, *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010).

The skepticism with which the Court now seemingly views Plaintiff's conduct is a byproduct of Plaintiff's counsel saying <u>nothing but the truth</u> in open court. Plaintiff also has not submitted any "bogus documents." While the Court has ordered Plaintiff to show cause as to the reasonableness of

Plaintiff's investigation to determine that electronic service of process was proper against Ms. Padilla (to which Plaintiff responds separately), questions about diligence of investigation alone are not sufficient to support findings of bad faith, let alone fraud. *See Jones v. Britt Airways, Inc.*, 622 F. Supp. 389, 393 (N.D. Ill. 1985) ("A failure to investigate is not in itself evidence of bad faith."); *United States v. Brown*, 739 F.2d 1136, 1143 (7th Cir. 1984) ("Bad faith is an essential element of fraudulent intent."). Moreover, even conduct that would otherwise qualify as fraud is not necessarily sufficient to qualify as "fraud on the court." *In re Golf 255*, 652 F.3d at 810–11. Rule 60(d)(3) is not an acceptable avenue for modifying the Default Judgment Order.

Plaintiff acknowledges, however, that the Court would have discretion to entertain an independent action to relieve a party from the Default Judgment Order under Rule 60(d)(1). An independent action is far from the most efficient approach and serves no one's interests. Plaintiff is not interested in prevailing solely on technicalities. Plaintiff and its representatives are more inclined to justify the good faith and reasonableness of their conduct, which they continue to vigorously maintain. A judgment debtor is not the only party that may bring a motion under Rule 60(b). <u>Any party</u> to a judgment is permitted to file it. *United States v. Manville Sales Corp.*, No. 88 C 630, 2005 WL 526695, at *1 (N.D. Ill. Mar. 2, 2005). In this case, that includes Plaintiff.[2]

On a motion under Rule 60(b)(5), the Court may relieve a party from a final judgment order if "applying it prospectively is no longer equitable." FED. R. CIV. P. 60(b)(5). If the Court does not

---

[2] There is, currently, a pending motion filed under Rule 60(b) by Ms. Padilla's lawyer, Benjamin Lockyer, on behalf of one of the other defendants in this case, Ara Dermarderosian. [*See* Dkt. 101]. If the prospective application of the Default Judgment Order in its current form was considered no longer equitable, then that would be a determination based on a motion properly brought under Rule 60(b)(5). The Dermarderosian motion did not include any arguments with respect to Rule 60(b)(5). [*See* Dkt. 101]. Furthermore, Plaintiff has already timely filed a response to the arguments contained in the Dermarderosian motion. [Dkt. 109]. The Dermarderosian motion contains arguments relating to the catch-all Rule 60(b)(6), but that provision is mutually exclusive with all of the other subsections of Rule 60(b). [*See* Dkt. 109 at 12–13]. While the reply brief with respect to the Dermarderosian motion has not been filed yet, it is "well-settled" that litigants cannot make new arguments or present new facts in a reply brief. *Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989). Therefore, it would be inappropriate for the Court to use the pending Dermarderosian motion to modify the equitable relief in the Default Judgment Order.

believe that applying the Default Judgment Order in its current form prospectively against Ms. Padilla (or other defaulted defendants) would still be equitable, then, as a matter of courtesy and convenience, Plaintiff is certainly willing to make the Rule 60(b)(5) motion to modify the Default Judgment Order on terms that the Court would deem prospectively equitable. Plaintiff would hope that the Court would take that as a sign of good faith from both Plaintiff and Plaintiff's counsel, and as further reinforcement of the fact that Plaintiff and its representatives have at all times simply sought to protect Plaintiff's intellectual property rights, including by seeking to increase potential recovery of the statutory damages award the Court deemed appropriate to grant.

For whatever it's worth, Plaintiff's counsel has been in contact with eBay's representatives since the July 10, 2025 hearing and has received confirmation that eBay proceeded to completely discontinue access to defaulting defendants' accounts based on eBay's interpretation of the language in Section 3(a) of the Default Judgment Order.[3] eBay confirmed that it would be willing to reinstate access to the accounts at Plaintiff's request and, in good faith, Plaintiff's counsel has, prior to the filing of this brief, instructed eBay to reinstate such access, subject to a continued prohibition relating to listings that offer counterfeit versions of products through the use of Plaintiff's trademark(s). (To the extent that the Court prefers to hold a cynical view of Plaintiff's intentions, Plaintiff receives no benefit (nor has ever received any benefit) from judgment debtors' inability to generate additional revenues. After all, how would Plaintiff be able to collect anything in the future? Plaintiff continues to maintain that the Default Judgment Order was properly granted against Ms. Padilla, and that Plaintiff is not responsible for any unintentional aftereffects of Plaintiff's lawful attempts to execute the Default Judgment Order. As of the date of this filing, there is no satisfaction of judgment with respect to Ms. Padilla's debt on the Default Judgment Order.)

---

[3] To Plaintiff's counsel's knowledge, other platforms involved in this case to which Plaintiff's counsel sent the Default Judgment Order did not take down defaulted defendants' online storefronts and solely turned over funds while continuing to maintain the injunctive relief with respect to Plaintiff's trademarks.

A lingering issue remains in that Rule 60(b), on its face, only permits for default judgments to be <u>set aside</u>, <u>not modified</u>. That presents a potential problem for Plaintiff, in that Plaintiff does not view it appropriate to set aside the Default Judgment Order in its entirety. Same as before, Plaintiff maintains that a default judgment was properly granted against Ms. Padilla (and all other defaulted defendants), and that a complete absence of relief for Plaintiff is not an equitable resolution. Plaintiff would help facilitate <u>modification</u> of the Default Judgment Order, not complete vacatur, as statutory damages were rightly awarded on the merits and, as addressed below, at least some permanent injunctive relief would be appropriate.

Though not binding authority, one district court within the Seventh Circuit has found – and specifically with respect to application of Rule 60(b)(5) – that a district court "must always be willing to redraft an injunctive order <u>at the request of the party obtaining such relief</u> in order to insure that the decree accomplishes its intended result." *Perrotte v. Percy*, 489 F. Supp. 212, 214 (E.D. Wis. 1980) (emphasis added) (citing *United States v. United Shoe Machinery Corp.*, 391 U.S. 244 (1968)). Upon a plaintiff's showing "that events subsequent to entry of the permanent injunction have rendered that relief ineffective," the plaintiff's Rule 60(b)(5) motion for modification of the injunction can be granted regardless of timing. *Perrotte*, 489 F. Supp. at 214. That would be the nature of Plaintiff's putative motion under Rule 60(b)(5).[4]

As a final point, despite the Court's apparent skepticism regarding the propriety of continued permanent injunctive relief in this case, on the merits, a permanent injunction prohibiting the use of Plaintiff's trademarks in association with counterfeit goods is entirely appropriate. In the Seventh

---

[4] In reaching its conclusion, the *Perrotte* court did cite a treatise that the portion of Rule 60(b)(5) relating to relief based on an absence of equitableness in prospective application of a judgment is "little more than a codification of the universally recognized principle that a court has continuing power to modify or vacate a final decree." 489 F. Supp. at 214 (quoting 11 Wright & Miller § 2961). As addressed above, however, more recent appellate-level rulings from the Seventh Circuit seem to confirm that this principle has not translated into a *sua sponte* power to modify or vacate a judgment. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008).

Circuit, the district court has discretion "to grant or deny an injunction against conduct which has ceased and is not likely to recur." *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1151 (7th Cir. 1992) (internal quotation marks omitted). In the trademark context, the plaintiff is entitled to effective relief, and any doubt as to the extent of the relief must be resolved in the plaintiff's favor and against the defendant. *Id*. After all, if the defendant sincerely intends not to permit further infringement, an injunction harms it little, but if the defendant is intent on further infringing activity, the injunction provides the trademark owner with substantial protection. *Id*. If no permanent injunctive relief at all were granted as part of a potential modified order, nothing would stop willful infringers from re-listing counterfeit products with the use of Plaintiff's trademarks. Plaintiff therefore implores the Court not to alter the permanent injunctive relief in a manner that will prejudice Plaintiff's trademark rights.

## IV.   <u>Conclusion</u>

Regardless of any timeliness concerns, the parties are at odds as to whether electronic service of process against Ms. Padilla was properly effected. For the reasons set forth in Plaintiff's response to the Court's order to show cause as to propriety of electronic service against Ms. Padilla, Plaintiff maintains that Plaintiff and its representatives at all times acted properly, reasonably, legally, and with due diligence. Any tactical decisions were made in the good-faith belief that such an approach would maximize Plaintiff's potential of collecting on a valid judgment. Such conduct did not contravene any applicable law, nor was it unethical or sanctionable. It also did not in any way contravene the terms of the Default Judgment Order, nor did it increase Ms. Padilla's liability beyond what the Court deemed to be appropriate for her violation of the Lanham Act.

The Court pointed out at the hearing that Schedule A cases have certain practicalities that deviate from traditional judgment-execution procedures. Plaintiff's counsel welcomes any guidance the Court may wish to provide as to what the Court considers to be appropriate for judgment

execution in cases involving ecommerce, in which a court order directs third-party platforms to turn over funds to prevailing plaintiffs. Plaintiff is also willing to facilitate any modifications to the Default Judgment Order that the Court deems equitable.

Dated: July 15, 2025

/s/ *Ilya G. Zlatkin*
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
ilya@zce.law
(312) 809-8022

*Counsel for Plaintiff*