IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OUYEINC LTD., | ) |
| | ) |
| Plaintiff, | ) Case No. 22-cv-05187 |
| | ) |
| v. | ) Hon. J. Jeremy C. Daniel |
| | ) |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A," | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT ARA DERMARDEROSIAN'S
COMBINED REPLY IN SUPPORT OF MOTION TO SET ASIDE DEFAULT JUDGMENT
AND MOTION FOR SANCTIONS AND TO FIND CASE EXCEPTIONAL[1]**

Defendant Ara Dermarderosian, identified as "No. 98 Garnisells," ("Mr. Dermarderosian"), moves to vacate the default judgment under Federal Rules of Civil Procedure 55(c) and 60(b), and in support of his motion respectfully states as follows:

**INTRODUCTION**

The Court should vacate the default and award sanctions because Plaintiff (1) withheld service of its own default judgment to platforms, springing it later as litigation leverage; (2) never bothered to buy or inspect the single product it brands "counterfeit"; and (3) disregarded eBay listings showing that Defendant is a run-of-the-mill California reseller, not a shadowy offshore counterfeiter. These undisputed facts establish (i) excusable neglect under Rule 60(b)(1); (ii) a void judgment for want of due-process service under Rule 60(b)(4); and (iii) Rule 11-level unreasonableness warranting an "exceptional-case" fee award. Plaintiff's opposition, which fixates on safe-harbor technicalities and minor date typos, never confronts the core misconduct: it sat on an unserved default for nearly a year, then froze domestic e-commerce accounts based solely on a boiler-plate "visual inspection" declaration

---

[1] Defendant files this as a combined reply in support of both the motion to set aside default judgment and the motion for sanctions due to the significant overlap in underlying facts, evidentiary issues, and legal contentions. Consolidated briefing avoids redundancy and promotes judicial efficiency without blurring the distinct standards applicable to each motion.

1

that omits any mention of Dermarderosian or any other specific defendant, like co-defendant Michelle Padilla. Because the record shows a meritorious first-sale defense and a pattern of overreaching litigation tactics, the Court should set the default aside, dissolve the restraints, and award Defendants their fees.

## I. The Court should vacate the default entered against Mr. Dermarderosian.

### A. Good cause exists to set aside the motion for default judgment because Mr. Demarderosian was never served with a copy of the default judgment (or notice of this lawsuit).

Defendant acted quickly once he learned of this case. He hired counsel and immediately began negotiating the return of his account. Despite informing Plaintiff of the faults in its case, lack of proper service, and a meritorious defense, Plaintiff and its counsel refused to negotiate or provide the release of Plaintiff's account. Despite being provided with a motion for sanctions and the basis for Defendant's claims, Plaintiff ignored Defendant's requests and proof that he was a California business owner that resold products he bought at auction. After observing the 21-day safe harbor rule, Defendant filed his motion for sanctions.

Plaintiff makes a misleading and disingenuous argument that Defendant delayed for over a year in contesting the default judgment. This argument is belied by counsel for Plaintiff's statement to the Court[2] that it did not send the default judgment or order to restrain assets until this year. Further, Plaintiff noted that it did not serve a copy of the default judgment on the Defendants either via email or personal service. It was only when EBay froze the account on or around late March 2025 did Defendant first hear of this lawsuit. Within days he retained counsel, reviewed the docket, opened settlement discussions, and, when Plaintiff refused to lift the restraint, filed the present motion. An approximate ten-week interval from first notice to formal Rule 60(b) practice is the very model of diligence; any longer delay lies at Plaintiff's doorstep, not Defendant's.

---

[2] A copy of the transcript from the Court's July 10, 2025 hearing could not be ordered in time for the filing of this response. Counsel represents that these statements occurred before the Court and are recited in good faith.

The record is further clouded by Plaintiff's irreconcilable statements about service. At the July 10, 2025 status hearing counsel forthrightly told the Court that no default-judgment packet had ever been served. In the opposition brief now before the Court the same counsel claims the judgment was served by e-mail in May 2024 and is thus presumptively valid. Both propositions cannot be true. That contradiction alone strips the signed return of service of any evidentiary weight and obliges Plaintiff to produce objective proof—server logs, delivery receipts, read confirmations—showing that its e-mail actually reached the addressee. It has produced none.

Rule 4(l)(B) requires more than counsel's say-so; it demands either a receipt signed by the defendant or "other evidence satisfying the Court that the summons and complaint were delivered." A boiler-plate declaration that an e-mail was "sent" to an address harvested from eBay does not establish delivery and is routinely rejected as insufficient. Without bounce-back data, read receipts, or similar corroboration, the presumption of proper service never arises, and the burden should not shift to Defendant to disprove notice.

Nor does due process tolerate Plaintiff's minimalist approach. Plaintiff had in hand a Glendale, California mailing address and could easily have posted or couriered hard-copy notice, or resent the e-mail when no appearance was filed. Choosing instead to rely on a single unverified e-mail to a marketplace alias—an address that might be dormant or filtered—was not "reasonably calculated" to apprise Defendant of the action. Where a more reliable channel lies ready to hand and is ignored, service fails.

Plaintiff's fallback to Rule 4(e)(1) and California Code § 413.30 fares no better. Section 413.30 permits substitute service such as e-mail only after the plaintiff has exercised "reasonable diligence" in attempting personal service. Plaintiff attempted none. California courts applying § 413.30 reject e-mail-only service where, as here, the plaintiff possesses an actual domestic address but makes no effort to use it. Plaintiff's shortcut therefore falls outside the statute.

Plaintiff's timeliness objection ignores the single fact that controls every deadline analysis: Mr. Dermarderosian had no actual notice of the judgment until Ebay froze his funds in

3

late March 2025. All earlier "service" was illusory, so the clock could not start to run in January 2024. He retained counsel within days, reviewed the docket, sought voluntary relief, and, when Plaintiff refused, moved to vacate the judgment on June 11, 2025—roughly ten weeks after first learning of it.

In short, Defendant's rapid response once notified constitutes good cause for any delay, while Plaintiff's conflicting statements and uncorroborated proof leave the service record, at best, doubtful and, at worst, nonexistent. Under Rule 60(b)(4) a judgment entered without valid service is void, and under Rule 60(b)(1) any delay born of Plaintiff's defective notice is excusable. Here, Plaintiff's reliance on the one-year bar in Rule 60(c)(1) presupposes that the judgment was properly served and the one-year period therefore began to run. Even if the Court views the motion through Rule 60(b)(6), the reasonableness inquiry anchors to when the movant first received actual notice. from late March, a June filing is well within any reasonable window.

Plaintiff's own conduct confirms that the delay was excusable. It never attempted traditional service at the Glendale, California address displayed on the eBay listing, never followed up when no one appeared, and admitted at the July 2025 hearing that it never sent the default-judgment order at all. Having laid a procedural trap, Plaintiff cannot now fault Defendant for the time it took to spring it.

Because Defendant acted swiftly once he had real notice, and because the supposed service that would start Rule 60's clocks is itself invalid, the motion is timely and should be heard on the merits.

**B.  Meritorious defense: Plaintiff cannot prove counterfeiting where it never saw the product.**

Plaintiff's "no-defense" contention rests on the same uncorroborated "visual inspection" that underlies its entire case. A naked assertion that a product is counterfeit—unsupported by a test purchase, a lab report, or even a photograph that shows a trademark deviation—carries no evidentiary weight once challenged. Defendant has produced the eBay listing, PayPal receipt, and auction invoice

4

showing that the units he resold were factory-sealed "Pro-Wax 100" warmers sourced from a California liquidation sale.

Plaintiff's authorities do not say that a trademark owner's self-serving affidavit automatically strips goods of their genuineness; they simply confirm that the first-sale doctrine does not shield sellers of proven counterfeits. Until Plaintiff meets its burden with real evidence, the doctrine remains fully in play and easily "raises a serious question" about the propriety of the default.

Finally, the contradiction in Plaintiff's own service narrative—counsel told the Court in July 2025 that no default-judgment papers were ever served, yet now claims perfect service eleven months earlier—underscores a further defense under Rule 60(b)(4): a judgment entered without valid notice is void. When the very foundation of personal jurisdiction is shaky, a defendant's challenge is by definition "meritorious."

At this stage Defendant need not prove his case; he need only present facts that, if credited, would make the outcome uncertain. He has done so with documentary evidence of lawful domestic sourcing, good-faith resale, and defective service. That easily surpasses the low threshold for a meritorious defense and weighs heavily in favor of setting aside the default.

    C.    **The Default Judgment Is Void—Service and Personal-Jurisdiction Defects Warrant Vacatur Under Rule 60(b)(4) (and, Alternatively, 60(b)(6))**

Plaintiff's attempt to cabin this motion within Rule 60(b)(1)-(3) misses the threshold point: a judgment entered without valid service or personal jurisdiction is void, and a void judgment may be attacked at any time. Fed. R. Civ. P. 60(b)(4); *United States Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). Whether eighteen months or eighteen years have passed is irrelevant if service never conferred jurisdiction.

Plaintiff also inverts the burden. A Rule 60(b)(4) movant need only produce evidence that casts "some doubt" on service; once that showing is made the party seeking to enforce the judgment must prove jurisdictional facts. *See Relational, LLC v. Hodges*, 627 F.3d 668, 672-73 (7th Cir. 2010) (where record "contains no proof of service," presumption of validity collapses).

Here the record is worse than silent: counsel first told the Court on July 10, 2025 that no default papers were ever served, but stated that they had been served pursuant to the Court's June 16, 2023 minute order. That stark inconsistency by itself "destroy[s] the presumption of valid service" and shifts the burden to Plaintiff to produce objective evidence—server logs, delivery receipts, bounce-back reports—showing that the summons actually reached Mr. Dermarderosian. None has been offered and a self-serving affidavit is not evidence.

Plaintiff's entire personal jurisdiction argument rests on the Seventh Circuit's holding in *NBA Properties, Inc. v. HANWJH* ("*NBA*"), but *NBA* addressed a very different problem: whether Illinois could assert jurisdiction over anonymous foreign counterfeiters with zero U.S. presence who operated only through border-insensitive online "stores." 46 F.4th 614 (7th Cir. 2022). The Seventh Circuit expressly noted that those defendants had "no domestic sales infrastructure" and that Illinois was the only practical forum. Id. at 625-26.

Here, Defendant is a California resident running a one-person resale venture from Glendale. For domestic parties, the Supreme Court has made clear that "the paradigm forums" are the state of incorporation and the state of principal place of business unless the plaintiff can show additional, forum-specific contacts. *TC Heartland LLC v. Kraft Food Grp. LLC,* 581 U.S. 258, 266-67 (2017). Plaintiff identifies only one supposed Illinois contact: the eBay listing was visible nationwide and could have shipped to Illinois—but was never in fact purchased or received in this jursidction. That sort of attenuated, internet-wide accessibility is not the "something more" required to establish purposeful availment of a particular state.

The Schedule A default orders Plaintiff cites do not help; they simply rubber-stamped jurisdiction over unknown foreign sellers on undeveloped records. None hauled a known U.S. individual into Illinois on the basis of a single listing. Personal-jurisdiction doctrine demands more—especially where, as here, the validity of service remains in serious doubt.

Rule 60(b)(6) is likewise available. A party may invoke the catch-all provision when the asserted ground—here, counsel's contradictory representations and the resulting cloud over service—

6

does not fit neatly within 60(b)(1)-(3). *See Arrieta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006). Fraud on the court is precisely such a circumstance, and courts have set aside defaults far older than this one where the plaintiff's sworn statements were later called into question. *See F.T.C. v. HSBC Credit, Ltd.*, 602 F. App'x 817, 819-20 (11th Cir. 2015).

Finally, Plaintiff's attempt to shrug off *Celine S.A. v. Partnerships & Unincorporated Associations*, is unavailing. 2025 WL 712484 (N.D. Ill. Mar. 5, 2025). Celine vacated a default because the service record was "unusually bare" and plaintiff's infringement proof "gave reason to doubt," holding that such defects amount to the "extraordinary circumstances" required for Rule 60(b)(6) relief. Those same defects are present here in amplified form. Plaintiff never filed server logs, delivery receipts, or any third-party confirmation that the summons actually reached Mr. Dermarderosian—and counsel has now offered two contradictory accounts of whether notice was ever sent. The evidentiary gap on infringement is equally stark: unlike in *Celine*, where the absence of a trademark on the product photographs cast doubt, here Plaintiff never made a test-buy and relies on nothing more than an eBay screenshot, leaving the accusation of counterfeiting entirely speculative.

*Celine* also noted that a credible defense weighs in favor of reopening; the defendant there offered one, and Mr. Dermarderosian offers an even stronger set—first-sale protection and the jurisdictional shield recognized in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258 (2017), which confines suit against a domestic reseller to his home forum absent additional contacts. Thus, the very circumstances that compelled vacatur in Celine—anemic service evidence, questionable infringement proof, and the presence of a facially meritorious defense—are even more pronounced here, confirming that the default judgment must be set aside under Rule 60(b)(6) if not Rule 60(b)(4).

Because Plaintiff cannot establish valid service or personal jurisdiction, the default judgment is void and must be set aside under Rule 60(b)(4); at a minimum the extraordinary circumstances justify relief under Rule 60(b)(6).

**II.      Plaintiff's Litigation Conduct Warrants Sanctions and Fees**

   **A. Plaintiff's filings violate Rule 11(b)(3).**

Plaintiff launched this lawsuit—and secured the extraordinary remedies of an ex parte TRO, asset freeze, and ultimately a default judgment—without a shred of product evidence. Its sole factual submission is a boiler-plate "visual-inspection" declaration that (i) never identifies Mr. Dermarderosian (or any other specific defendant), (ii) describes no counterfeit indicia, test-purchase, or authentication methodology, and (iii) recites, verbatim, the same generic allegations it has recycled in dozens of "Schedule A" cases. Rule 11(b)(3) requires counsel to certify that "factual contentions have evidentiary support." Where, as here, the plaintiff never bought, opened, or even photographed the accused goods, that certification was objectively unreasonable.

The lack of inquiry is compounded by Plaintiff's decision to ignore contrary facts staring it in the face. The eBay listing that prompted Plaintiff to label Mr. Dermarderosian a "foreign counterfeiter" prominently displayed a Glendale, California return address and offered domestic USPS shipping. Yet Plaintiff's TRO papers swear—without qualification—that "all Defendants are foreign sellers who will spirit assets overseas." Rule 11 forbids a party from repeating boiler-plate averments once it learns they are false as to a particular defendant.

Plaintiff's sand-bagging of the default judgment deepens the Rule 11 violation. Although the judgment issued in January 2024, Plaintiff waited over a year before serving marketplace platforms, thereby maximizing the account balances it could garnish and weaponizing the judgment as settlement leverage. No legitimate enforcement need justified that delay; the only discernible motive was to inflate leverage and fees. Courts in this District have rebuked identical tactics. In *Céline S.A. v. Partnerships & Unincorporated Ass'ns*, 2025 WL 712484, at *5-6* (N.D. Ill. Mar. 5, 2025), the Court found a Rule 11 breach where the plaintiff "conducted no independent investigation," ignored evidence the defendants were U.S. sellers, and relied on the same form declarations used here. Plaintiff's conduct tracks *Céline* point for point—and, if anything, exceeds it in unreasonableness.

8

The parallel to *Xped LLC v. Sched. A Defs*, is even stronger. 2023 WL 5748350 (N.D. Ill. Sept. 6, 2023). There, Judge Jenkins sanctioned counsel who misrepresented that every defendant was a foreign counterfeiter and obtained an asset freeze against a Connecticut business on nothing more than a rote declaration. The Court held that such template filings, untethered to any defendant-specific investigation, violate Rule 11 and warranted both fee shifting and a public reprimand. Plaintiff's affidavit and strategy here are carbon copies of the condemned conduct in *Xped*; the same sanction is appropriate.

**B. These circumstances render the case "exceptional" under 15 U.S.C. § 1117(a).**

A Lanham-Act case is "exceptional" when it "stands out" with respect to either the substantive weakness of a party's position or the unreasonable manner in which the litigation has been litigated. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Both prongs are met here.

Plaintiff's infringement case rests on zero product testing, no chain-of-custody evidence, and an affidavit that does not even claim to have examined Defendant's merchandise. Once Defendant produced the auction invoice and PayPal receipt showing good-faith domestic sourcing—and raised a textbook first-sale defense—Plaintiff had no good-faith basis to maintain its accusations of counterfeiting.

Plaintiff's mass-joinder complaint, ex parte seizure, withholding of the default judgment for nearly a year, and contradictory statements about service and notice collectively "stand out" as objectively unreasonable. The Seventh Circuit has cautioned that Schedule A plaintiffs wield "formidable weapons" that must be tempered by a duty of accuracy and candor. Plaintiff ignored that duty, turning a dispute with a small-scale California reseller into a scorched-earth counterfeiting action in an improper forum.

Courts routinely find such tactics exceptional. *Céline* and *Xped* both awarded fees where the plaintiff relied on boiler-plate affidavits and overreached with asset restraints against domestic defendants. The same remedy is warranted here: the Court should (1) vacate the default, (2) dissolve

the asset freeze, and (3) award Mr. Dermarderosian his reasonable fees and costs incurred in escaping an improperly obtained judgment.

## CONCLUSION

For the foregoing reasons, the Court should:

1. **Set aside** the default judgment as to Mr. Dermarderosian (ECF 90);

2. **Impose sanctions** on Plaintiff and its counsel under Rule 11 and deem the case "exceptional" under 15 U.S.C. § 1117(a);

3. **Award** Defendants reasonable attorneys' fees (or any greater amount the Court deems just); and

4. **Order** Plaintiff to reimburse all PayPal/eBay funds wrongfully restrained, with interest.

Respectfully submitted,
/s/ Benjamin C.R. Lockyer
Benjamin C.R. Lockyer
Lockyer Law LLC
6515 W. Archer Ave.
Chicago, IL 60638
(773) 340-0011
ben@lockyerlaw.com

**Counsel for Defendant
No. 98 Garnisells (Ara Dermarderosian)**