IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OUYEINC LTD., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE PARTNERSHIPS AND )<br>UNINCORPORATED ASSOCIATIONS )<br>IDENTIFIED IN SCHEDULE "A," )<br>)<br>Defendants. ) | Case No. 22-cv-05187<br><br>Hon. J. Jeremy C. Daniel |

**REPLY IN SUPPORT OF MOTION FOR RECONSIDER ORDER
DENYING MOTION TO SET ASIDE DEFAULT JUDGMENT**

Defendant Michelle Padilla No. 107 Itsyours4keeps ("Ms. Padilla"), by and through her counsel, presents her reply in support of her motion to reconsider motion to set aside the default judgment entered against her, and in support of her motion respectfully states as follows:

**ARGUMENT**

Plaintiff's opposition strains to hide the elephant in the room: this default judgment—and the permanent asset freeze it embedded—were obtained on a one-sided record crafted entirely by Plaintiff, then deployed a full year later when it best served Plaintiff's leverage. In January 2024 Plaintiff persuaded the Court to enter an ex parte injunction by repeating the familiar Schedule A incantation that all defendants are "foreign counterfeiters" who will spirit away their funds unless restrained. Yet a two-second look at Ms. Padilla's e-Bay listing would have exposed that narrative as fiction: the listing showed a California return address, offered domestic shipping only, and bore none of the hallmarks of an overseas counterfeiting ring. What it did show was a U.S. citizen reseller whom Plaintiff never test-purchased from, never examined, and never investigated individually.

1

Having secured the injunction, Plaintiff then went dark. For more than twelve months it took no steps to enforce the judgment, silently allowing Ms. Padilla's Ebay balance to accumulate. Only in Spring 2025—long after the Court's oversight had receded—did Plaintiff provide the turnover order on e-Bay and freeze every penny in Padilla's account. That gamesmanship deprived Padilla of notice while inflating the very balance Plaintiff now brandishes as evidence of "irreparable harm." Courts in this District have condemned identical tactics. *Xped LLC v. Entities Listed on Ex. 1*, 2023 WL 5748350, at *14–17 (N.D. Ill. Sept. 6, 2023) (sanctioning plaintiff for misrepresenting defendants' domicile and freezing U.S. sellers' funds ex parte); *Viacom Int'l Inc. v. P'ships*, No. 20 C 7418, 2022 U.S. Dist. LEXIS 244119 at **11-12 (N.D. Ill. Mar. 11, 2022) (awarding costs because "the screenshot in the exhibit provided by Viacom clearly shows that Kreative Kidz ships products directly. This fact, combined with the clear information available on its website that the company was U.S. based, is sufficient to merit compulsory damages.").

Most concerningly, Plaintiff now insists this Court is powerless to revisit its own order—an order entered without adversarial briefing, on a record since disproven, and concerning purely equitable relief. That position is untenable and ignores well established authority to modify its orders and injunctive relief. Federal courts retain inherent authority to modify or vacate prospective injunctive orders whenever "equitable considerations so require." *In re Hendrix*, 986 F.2d 195, 198 (7th Cir. 1993) (collecting cases), *cited by Cook Inc. v. Boston Sci. Corp.*, 333 F.3d 737, 745 (7th Cir. 2003) (Posner J.) (noting that the held the power to modify a permanent injunction after an entry of summary judgment); *FTC v. Construct Data Publishr's. A.S.*, No. 13-cv-1999, 2014 U.S. Dist. LEXIS 171677 at *24 (N.D. Ill. Dec. 11, 2014) ("The Court may modify an injunction whenever the principles of equity require it to do so.").

Rule 55(c) expressly authorizes setting aside a default "for good cause," and Rule 60(b)(3) compels relief where, as here, the judgment was procured through materially false representations. Further, when a preliminary injunction issues *ex parte*, the movant bears the ongoing burden of justifying its continuation once an adversary appears. *Jiaxing Zichi Trade Co. v. Yang*, 2021 WL 4498654, at *3 n.3 (N.D. Ill. Aug. 19, 2021).

Ms. Padilla acted with dispatch once she learned of the freeze—first *pro se*, now through counsel—submitting newly discovered evidence and detailing Plaintiff's investigative failures. Vacatur would restore the preferred posture of adjudicating claims on their merits, while causing Plaintiff no prejudice beyond the obligation to prove its case. Allowing the freeze to stand, by contrast, would perpetuate an injunction obtained through misrepresentation and tactical delay, denying a U.S. citizen her day in court.

For these reasons, and those set forth more fully below, the Court should grant Ms. Padilla's motion, set aside the default, and require Plaintiff to meet its burden in an adversarial proceeding.

**I.     The Court Retains Plenary Authority to Modify or Dissolve Its Own Equitable Orders**

The Court's continuing jurisdiction over its own equitable decrees is well settled. The Supreme Court has taught that a decree entered in the exercise of the equity jurisdiction may be changed or ended when changed conditions require. *See e.g.*, *U.S. v. Swift & Co.*, 286 U.S. 106, 114-15 (1932) ("[A] court does not abdicate its power to revoke or modify its mandate if that it has been doing has been turned through changing circumstances into an instrument of wrong."). The Court later reaffirmed that duty in *System Federation No. 91 v. Wright*, explaining that an injunction must be modified when circumstances underlying the order have changed because equitable orders are not intended to operate in perpetuity irrespective of

3

conditions. 364 U.S. 642, 647-48 (1961) ("holding that a district court has "wide discretion" to modify an injunction based on changed circumstances or new facts"); *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 627 (7th Cir. 2007)("[A]ny injunction issued by a court of equity is itself subject to later modification, as courts grant injunctive relief with the understanding that there will be an opportunity for modifying or vacating the injunction when its continuance is no longer warranted")(internal quotations omitted), *cited by Luxxotica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16-cv-05314, 2016 U.S. Dist. LEXIS 144660, at *20 (N.D. Ill. Oct. 19, 2016).

"As part and parcel of its inherent equitable power, and pursuant to Federal Rule of Civil Procedure 60(b), a court 'may relieve a party . . . from a final judgment, order, or proceeding' either because . . . applying it prospectively is no longer equitable; or . . . any other reason that justifies relief." *SEC v. Bilzerian*, No. 89-cv-1854, 2025 U.S. Dist. LEXIS 13238 at *24 (D.C. Cir. Jan. 24, 2025) (quoting Fed. R. Civ. P. 60(b)(5)-(6), *and citing Swift & Co.*, 286 U.S. at 114 ("We are not doubtful of the power of a court of equity to modify an injunction in adaption to changed conditions . . . ." The Seventh Circuit echoes the same principle: "any injunction issued by a court of equity is itself subject to later modification." *St John's United Church of Christ*, 502 F.3d at 627; *see also Cook Inc. v. Boston Sci. Corp.*, 333 F.3d 737, 745 (7th Cir. 2003) (Posner, J.) (noting that the court held held the power to modify a permanent injunction after an entry of summary judgment).

This supervisory power is heightened in Schedule A anti-counterfeiting cases where, as here, the original injunction issued *ex parte* and without adversarial testing. In Jiaxing Zichi *Trade Co.*, Judge Pacold, the judge that entered in the injunction in this matter, recognized that once the restrained party appears and contests the basis for relief, the plaintiff bears the burden of persuading the Court that it should not disturb the injunction. *Jiaxing Zichi Trade Co.*, 2021 U.S.

4

Dist. LEXIS 190436 *8. Where the underlying order was procured through materially false or misleading representations, the court not only may but must revisit its decree. *See Céline S.A. v. P'ships & Unincorp. Assoc. Identif. on Sched. A.*, 2025 WL 712484, at *7 (N.D. Ill. Mar. 5, 2025) (vacating default judgment and dissolving related injunction after lack of service); *Xped*, 2023 WL 5748350 (entering Rule 11 sanctions for falsely claiming that a Connecticut company was a foreign counterfeiter).

In short, the Court's authority to maintain jurisdiction over, monitor, and—when justice demands—modify or vacate its equitable orders is not merely discretionary; it is an essential component of equitable jurisprudence, ensuring that remedial orders serve their intended purpose without producing unjust or unintended results. Here, Plaintiff argument that the Court is powerless to disturb the default judgment once entered conflates finality with immutability. TROs and preliminary injunctions in the Schedule A context are extraordinary and drastic remedies that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The January 3, 2024 order not only entered judgment by default but—critically—also imposed an ongoing asset-freeze and turnover mechanism. Such relief is quintessentially *equitable* and therefore remains "subject to the continuing control of the court that granted it." *Sys. Fed. No. 91*, 364 U.S. at 647. Rule 54(b) expressly provides that "any order…that adjudicates fewer than all the claims . . . may be revised at any time" prior to a final judgment adjudicating all claims.

Moreover, because the judgment was obtained by default, Rule 55(c) authorizes the Court to set it aside in accordance with Rule 60(b). The Seventh Circuit has made clear that defaults are not meant to be final and unassailable, and should be vacated whenever justice so requires. *See Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994). Accordingly, the Court possesses ample

5

authority to revisit the restraint and the default, particularly where the order continues to operate prospectively and the circumstances underlying its entry have materially changed. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 391 (1992) (courts may modify ongoing equitable decrees in response to altered circumstances).

## II. Padilla's Motion was Filed Within a Reasonable Time After She First Learned of the Restraint.

Padilla's motion is both timely and procedurally proper because any delay is traceable to Plaintiff's own strategic choices and because Plaintiff never effected the service required to make the default judgment enforceable in the first place. It is undisputed that Plaintiff sat on its January 3, 2024 turnover order for twelve months before transmitting it to Ebay in Spring 2025; only then did Padilla first learn that she had been sued when her funds were frozen. She responded promptly and as best as she could: still *pro se*, she moved for relief within weeks, and—after retaining counsel—filed the present Rule 60(b) motion a mere three weeks later. Courts apply that standard "with flexibility" for *pro se* litigants, recognizing that unrepresented parties cannot be expected to grasp (or meet) technical deadlines they never knew existed. *Jones*, 39 F.3d at 163.

Plaintiff's own briefing confirms that Padilla never received formal service of the summons, the complaint, or the default judgment. The sole "notice" Plaintiff can point to is an email that Padilla swears she never received—an unsurprising failure given that Plaintiff addressed all service through a mass email with no guarantees or confirmation that the recipient received the sent email, despite having a physical California address plainly listed on her eBay listing. Because Padilla is a domestic defendant, electronic service under Rule 4(f)(3) should never have been authorized. It was only through Plaintiff's boilerplate and blanket claim that Ms. Padilla, and all of the other defendants, were foreign counterfeiters that she was wrongfully joined to this lawsuit. [1] Compl. at ¶17 ("Defendants reside in the People's Republic of China or other foreign

6

jurisdictions."). Where a judgment is entered without valid service or personal jurisdiction, it is void and must be set aside under Rule 60(b)(4).

Even setting service defects aside, the equities overwhelmingly favor vacatur. The Court retains continuing jurisdiction over its own equitable orders and may modify or dissolve an asset restraint whenever justice so requires. *St. John's United Church of Christ*, 502 F.3d at 627. Here, Plaintiff secured the *ex parte* freeze by falsely swearing that all defendants are foreign counterfeiters at risk of moving assets offshore, despite at least two defendants having California physical addresses displayed their eBay seller page—a fact any minimally diligent investigation would have revealed. The belated execution of the turnover order—timed to maximize the balance in Padilla's Ebay account—confirms that Plaintiff's real objective was leverage, not brand protection.

Here, forcing Plaintiff to prove its claims on the merits and the appropriateness of how it obtained service and injunctive relief is not "prejudice." What would be prejudicial is allowing Plaintiff to retain a windfall obtained through defective service, strategic delay, and material misrepresentations. Accordingly, the default should be vacated and the case reopened so that the parties—and the Court—can test Plaintiff's claims on a full record.

### III. Plaintiff's Own Litigation Misconduct Independently Warrants Setting Aside the Default

Plaintiff's arguments in Section III recycles the same boiler-plate claims courts in this district have admonished—and rejected—in *Xped* and *Viacom*. Those cases make clear that a Schedule A plaintiff cannot satisfy Rule 11 by pasting generic buzz-words about "foreign counterfeiters" and "asset flight" into every case they file. Here, the falsity is plain on the face of the public record: Ms. Padilla's eBay listing lists a California return address and offers domestic shipping. Plaintiff did no test purchase, no product inspection, and no individualized inquiry
7

despite this readily available data. Rule 11(b)(3) demands "evidentiary support," not rote incantation. *See Xped LLC,* 2023 WL 5748350, **14-17 (sanctioning the restraint of a U.S. Company's assets after falsely claiming they were foreign counterfeiters).

Plaintiff's attempt to dismiss these issues as "harmless" ignores the Seventh Circuit's teaching that volume is no excuse. When litigants choose mass-joinder litigation, they must still conduct a reasonable pre-filing inquiry. *See See Céline S.A.*, 2025 WL 712484, at *7; *Xped*, 2023 WL 5748350. Plaintiff did not, the default judgment was procured my false statements and an ignorance of all indicators that Padilla and other defendants were United States citizens. This behavior warrants relief under Rule 60(b)(3) regardless of any Rule 60(b)(1) analysis.

Equity confirms the same outcome. Rule 60(b) exists "to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949), *cited by Pascente v. Berryhill*, No. 1:13-cv-01520, 2019 U.S. Dist. LEXIS 254755, at *4 (C.D. Ill. Mar. 18, 2019). Here, Ms. Padilla's Ebay business has been frozen for months on a demonstrably false premise--and causes her to lose income--while Plaintiff suffers no prejudice from litigating this matter on the merits.

### IV. The Record Establishes an "Exceptional" Case Warranting Fees and Damages From Lost Sales to Ms. Padilla.

Finally, this litigation "stands out" for both the weakness of its factual basis and the unreasonableness of Plaintiff's tactics, making it "exceptional" under 15 U.S.C. § 1117(a). Plaintiff's complete lack of product evidence, its reliance on blanket allegations contradicted by public facts, and its strategic delay parallel the misconduct for which fees were awarded in *Xped* and *Viacom*. The Court should follow those cases: vacate the default, dissolve the restraint, and shift Padilla's fees to the party whose misconduct caused them—Plaintiff.

Under 15 U.S.C. § 1117(a), a court may award fees in "exceptional" Lanham-Act cases— that is, cases that "stand out" in terms of the weakness of the claims or the unreasonable manner

8

in which the litigation was pursued. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Plaintiff's case stands out on both fronts. It rested on zero product evidence, blanket allegations contradicted by publicly available facts, and procedural tactics designed to extract settlements from innocent resellers. Courts in this District have twice awarded fees against Schedule-A plaintiffs for comparable misconduct. See *Xped LLC*, 2023 WL 5748350 (fees awarded where plaintiff misrepresented defendants' domicile); *Viacom Int'l Inc.*, 2022 WL 20467158, at **3-4 (fees warranted where plaintiff wrongfully restrained U.S. seller).

## CONCLUSION

For the reasons set forth above—and in Ms. Padilla's opening brief—the January 3, 2024 default judgment and the accompanying asset-freeze should be vacated. Plaintiff obtained that order through misrepresentations, defective service, and strategic delay; equity and Rules 55(c) and 60(b) therefore compel relief. Vacatur will restore this action to the posture favored by the Seventh Circuit—adjudication on the merits—while imposing no cognizable prejudice on Plaintiff beyond the burden of proving its claims in an adversarial proceeding. Due to this, Ms. Padilla respectfully requests that the Court:

(1) vacate the default judgment and dissolve the associated asset restraint; and

(2) award Padilla such fees and costs as the Court deems appropriate under 15 U.S.C. § 1117(a) and Rule 11.

Respectfully submitted,

/s/ Benjamin C.R. Lockyer
Benjamin C.R. Lockyer
LOCKYER LAW LLC
6515 W. Archer Ave.
Chicago, IL 60638
(773) 340-0011
ben@lockyerlaw.com
***Counsel for Defendant Michelle Padilla***

9