IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Ouyeinc Ltd., | ) |
| Plaintiff, | ) ) ) ) Case No. 1:22-cv-05187 |
| v. | ) ) Judge Jeremy C. Daniel |
| The Partnerships and Unincorporated Associations Identified on Schedule "A", | ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S POSITION FOR RULE TO SHOW CAUSE HEARING CONCERNING PLAINTIFF'S INVESTIGATION PRIOR TO SEEKING ELECTRONIC SERVICE OF PROCESS**

Plaintiff Ouyeinc, Ltd. ("Plaintiff"), by and through its undersigned counsel, voluntarily submits this brief to memorialize Plaintiff's position in advance of the rule to show cause hearing concerning Plaintiff's investigation prior to seeking electronic service of process [Dkt. 116; Dkt. 123] ("Rule to Show Cause"), including specifically with respect to Defendant Michelle Padilla, who was previously identified as Schedule A defendant No. 107, itsyours4keeps ("Ms. Padilla").[1]

**I.    INTRODUCTION**

At the open court hearing held on July 10, 2025, the Court expressed concerns about Plaintiff's pre-filing investigation to determine that electronic service of process would be appropriate against defendants, and particularly as it related to Ms. Padilla. The Court issued the

---

[1] While the Rule to Show Cause was made of the Court's own initiative at a notice of motion hearing for Ms. Padilla's motion to reconsider [Dkt. 113], separately, there are currently pending motions for sanctions under Rule 11 [Dkt. 102] and to set aside default judgment [Dkt. 101] that were filed by Attorney Benjamin Lockyer, counsel for Ms. Padilla, on behalf of one of Mr. Lockyer's other clients, Ara Dermarderosian. As a result, Plaintiff also addresses some of the arguments brought by Mr. Lockyer both in the pending motions as well as in open court, in some instances rehashing Plaintiff's arguments submitted as part of Plaintiff's responses to Mr. Dermarderosian's pending motions. [*See* Dkt. 109; Dkt. 110].

1

Rule to Show Cause to determine whether Plaintiff and Plaintiff's counsel complied with their Rule 11 obligations prior to determining that moving for electronic service of process, particularly with respect to Ms. Padilla, was appropriate.

The Court specifically reviewed Plaintiff's motion for electronic service of process [Dkt. 14] ("Electronic Service Motion"), homing in on Plaintiff's allegations discussing defendants in the aggregate, but reviewing how references to all defendants related to Ms. Padilla specifically. The following is the paragraph from Plaintiff's Electronic Service Motion to which the Court called attention, with the word "Defendants" replaced with "Ms. Padilla," and adjusted accordingly:

> Electronic service is appropriate and necessary in this case because [Ms. Padilla], on information and belief: (i) ha[s] provided no contact whatsoever, or specious, incomplete, unreliable, or false names and physical address information in [her] registrations for [Ms. Padilla's internet store], in order to conceal [her] location[] and avoid liability for [her] unlawful conduct; and (ii) rel[ies] almost exclusively on electronic communications to communicate with [her] third-party service providers and customers, demonstrating the reliability of this method of communication by which [Ms. Padilla] may be apprised of the pendency of this action. Authorizing service of process via e-mail and electronic publication will benefit all parties and the Court by ensuring that [Ms. Padilla] receive[s] the most-prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve [Ms. Padilla] in this manner, Plaintiff will almost certainly be left without the ability to pursue a final judgment.

[Dkt. 14 at 1 (internal citation omitted)]. Some of the discussion below addresses the application and accuracy of the above paragraph to Ms. Padilla. In addition to addressing Plaintiff's pre-filing investigation, this brief also addresses the propriety of electronic service with respect to ecommerce merchants like Ms. Padilla (and Mr. Lockyer's other client, Mr. Dermarderosian), who are purportedly based in the United States and are accused of violating anticounterfeiting provisions under the Lanham Act.

II. **STANDARD FOR REASONABLE INVESTIGATION UNDER RULE 11**

Whether counsel conducted an adequate pre-filing investigation, and "whether a legal position is far *enough* off the mark to be 'frivolous,'" are "fact-bound" and "fact-intensive" questions. *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 931–34 (7th Cir. 1989) (emphasis in original). As the Seventh Circuit has explained after an *en banc* hearing:

> [Rule 11's] focus is ex ante (what should have been done before filing) rather than ex post (how things turned out). How much investigation is justified (i.e., "reasonable") in light of the costs depends on the circumstances of the case, and Rule 11 does not allow an award of sanctions just because things went poorly after an investigation that was adequate in light of what was known (and how much time was available) before the paper was filed.

*Id*. at 932. "Unlike the traditional fee-shifting statute, Rule 11 focuses on inputs rather than outputs, conduct rather than result." *Id*. While bad faith is not required for conduct to be sanctionable, being "wrong on the law" does not necessarily result in sanctions either. *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 860 (N.D. Ill. 2015) (quoting *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir.1993)).

To satisfy Rule 11, a pre-suit investigation does not require "investigation to the point of certainty," because discovery can bring out other essential facts. *Nemmers v. United States*, 795 F.2d 628, 632 (7th Cir. 1986). Once newly discovered information is obtained, "Rule 11 does not require the updating of papers that were not subject to sanctions when filed." *Samuels v. Wilder*, 906 F.2d 272, 275 (7th Cir. 1990) (quoting *Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.*, 809 F.2d 451, 454 (7th Cir. 1987)).

"To assess the reasonableness of a party's inquiry into the factual basis of its claims, the test is whether 'competent attorneys performing a reasonable investigation could not have believed in the merit of the position taken in the complaint.'" *In re Dairy Farmers*, 80 F. Supp. 3d at 860 (quoting *Harlyn Sales*, 9 F.3d at 1269). Other factors courts assess include:

3

> [1] whether the signer of the documents had sufficient time for investigation; [2] the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion or other paper; [3] whether the case was accepted from another attorney; [4] the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and [5] whether discovery would have been beneficial to the development of the underlying facts.

*In re Dairy Farmers*, 80 F. Supp. 3d at 860 (quoting *Brown v. Fed'n of State Med. Bds.*, 830 F.2d 1429, 1435 (7th Cir.1987)). The use of hyperbole in pleadings, as long as it is not abusive and not wholly without evidentiary support, does not result in sanctions. *See In re Dairy Farmers*, 80 F. Supp. 3d at 861.

### III.    REASONABLENESS OF PLAINTIFF'S PRE-FILING INVESTIGATION

#### a.  Summary of Plaintiff's Pre-Filing Investigation

While at all times only the undersigned attorney has been signing filings on behalf of Plaintiff, Plaintiff's legal team in this case has consisted of three Illinois-licensed attorneys (including the undersigned) and two China-based attorneys. All attorneys, including the undersigned, have reviewed documents and evidence prior to any filings.

Plaintiff conducted the initial investigation, identifying listings for wax melter products using Plaintiff's PROWAX-100 mark without authorization. [Declaration of Rongji Ge ¶ 3]. Plaintiff's corporate representative took the screenshots of such product listings across eBay, Amazon, Walmart, and Joom markplaces. [*Id.*]. This investigation included defendant stores "itsyours4keeps" and "garnisells," neither of which included address information on their listings or storefront pages. [*Id.* ¶¶ 4–5]. Further, neither Google searches nor USPTO searches for the storefront names yielded any contact information. [*Id.* ¶ 6]. The products offered for sale by defendant stores "itsyours4keeps" and "garnisells" under the PROWAX-100 mark did not appear to be genuine, nor were those parties known to have been granted licenses to the PROWAX-100 trademark. [Dkt. 9 ¶ 7].

4

Plaintiff's attorneys (including the undersigned) proceeded to review the contents of each of the webpage screenshots provided by Plaintiff's corporate representatives. [Declaration of Ilya G. Zlatkin ¶ 3]. Plaintiff's evidence was reviewed to ensure no listings demonstrated a locatable U.S. address or other reliable indicia of a domestic operation. [*Id*. ¶ 4].

b. **Conclusions as to a defendant's location cannot be drawn solely from item location**

In briefings and in open court, Mr. Lockyer has argued that Plaintiff and Plaintiff's counsel should have determined that Mr. Lockyer's clients (Ms. Padilla and Mr. Dermarderosian) were not foreign counterfeiters. Mr. Lockyer's initial arguments had made clear that this was not based on any address viewable on their respective eBay pages but rather based solely on "Item Location." [*See* Dkt. 102-1 at 6]. Most recently, however, Mr. Lockyer has alleged, **without providing any evidence whatsoever**, that Ms. Padilla's "listing showed a California return address" and that "a physical California address [was] plainly listed on her eBay listing." [Dkt. 122 at 1, 6]. This is yet another example of Mr. Lockyer trying to get his way through misrepresentations.[2] As the evidence that has been submitted by Plaintiff showed (and which the Court reviewed at the July 10, 2025 hearing), Ms. Padilla's physical address was not displayed on the listing. [Dkt. 10-6 at 106–113].

The fact of the matter is that the location from where a product is being shipped to the consumer cannot be de facto equated to the location of the merchant. As determined from

---

[2] Mr. Lockyer and Mr. Dermarderosian first submitted false statements in support of Mr. Dermarderosian's motion for sanctions. [*See* Dkt. 110 at 13–14 (containing Plaintiff's summary of the false statements)]. In fact, Mr. Lockyer did not even make any attempt at controverting Plaintiff's accusations of having submitted verifiably false statements in support of Mr. Dermarderosian's motion for sanctions. [*See* Dkt. 121 (failing to respond to any arguments relating to the falsity of information submitted in support of Mr. Dermarderosian's motions)]. Since the in-person hearing, Mr. Lockyer has now also alleged in Mr. Dermarderosian's combined reply in support of Mr. Dermarderosian's pending motions that "[i]n the opposition brief now before the Court [Plaintiff's] counsel claims the judgment was served by e-mail in May 2024 and is thus presumptively valid." [Dkt. 121 at 3]. Mr. Lockyer does not cite to any portion of the pleadings where such statements were made, and the undersigned has reviewed all of those prior pleadings. Sure enough, Plaintiff's counsel has **not** at any point stated that any steps were taken in May 2024. Plaintiff's counsel is baffled as to any good-faith reason that Mr. Lockyer may have to fabricate such statements.

Plaintiff's counsel's prior experience (as both an attorney doing such investigations as well as a consumer living in the 21st Century), products ordered from foreign ecommerce merchants often arrive from U.S.-based addresses. For example, instances in which a product was actually ordered, and for which a receipt from PayPal was received with the merchant's name written in Mandarin, nevertheless resulted in the items arriving from U.S.-based locations. Further, in those prior experiences in which products were purchased from a U.S.-registered entity that was undeniably affiliated with foreign actors (as determined, *e.g.*, based on use of common email addresses), products would arrive from some other U.S.-based location that was completely unrelated to the U.S. jurisdiction in which an entity was registered. None of that is surprising, because foreign counterfeiters often engage in drop shipping, a practice through which they use a U.S.-based fulfillment center to ship the product to the consumer. No meaningful conclusions about the location of an ecommerce merchant can ever be drawn solely from the location of the product. *See Pado, Inc. v. SG Trademark Holding Co. LLC*, No. CV2001565CJCPVCX, 2020 WL 1445720, at *4–5 (C.D. Cal. Mar. 24, 2020) (granting motion to dismiss for lack of personal jurisdiction in California despite non-California merchant's use of California-based fulfillment centers); *Viahart LLC v. P'ships, et al.*, No. 19 CV 8181, 2022 WL 1004412, at *4 (N.D. Ill. Apr. 4, 2022) (noting foreign counterfeiter's use of fulfillment centers to store products across the United States and declining to find personal jurisdiction in Illinois because the counterfeiter's contacts with the Illinois-based fulfillment center are not enough to infer that the foreign counterfeiter is at home in Illinois).

As described above, yes, Plaintiff and its representatives could clearly see that the items being offered for shipment by both Ms. Padilla and Mr. Dermarderosian were allegedly located in California. The two eBay storefronts, however, did not contain any information whatsoever about

6

the names of the merchants (other than "itsyours4keeps" and "garnisells," respectively). Plaintiff's pre-filing investigation also involved clicking on the seller's name, and neither seller's profile disclosed any physical address. Clicking on the sellers' names to determine more information about the store at most resulted in a disclosure of location as "United States."[3] No actual address was provided on the online storefront or in the product listings, despite there being ample room to include such information. Furthermore, eBay's terms of service did not proscribe Ms. Padilla or Mr. Dermarderosian from identifying their business. [*See* Zlatkin Decl. ¶ 2, Ex. 1].[4]

The sole thing that Plaintiff and Plaintiff's representatives knew for sure was that both Ms. Padilla and Mr. Dermarderosian had accepted eBay's terms of service that allowed for some formal notices to be provided to them via electronic communications, and that they were amenable to electronic communications, given the capability of contacting the seller using eBay's electronic portal. It would have been unreasonable to expect Plaintiff's representatives to contact the sellers electronically prior to initiating suit, requesting names and physical addresses. Indeed, doing so would surely vitiate seeking preliminary injunctive relief as Plaintiff's counsel well knows that counterfeiters routinely close shop, liquidate accounts, and pop up under the guise of another ambiguously titled storefront. Any information that was subsequently provided by platforms

---

[3] Since eBay reinstated Ms. Padilla's and Mr. Dermarderosian's online storefronts, Plaintiff's counsel has been able to capture screenshots of the "itsyours4keeps" and "garnisells" pages. [*See* Zlatkin Decl., ¶ 4, Ex. 2]. While these screenshots are concurrent with this brief (and therefore are not guaranteed to look the same as the webpages may have looked back in 2021 and 2022 when Plaintiff and its representatives conducted their investigation), the current pages indeed show the defendants' locations as being nothing more descript than "United States." [*See id.*].

[4] Plaintiff's counsel acknowledges that in the Seventh Circuit, screenshots from the Wayback Machine cannot be authenticated for admissibility purposes by anyone other than authorized representatives of the Internet Archive. *Specht v. Google Inc.*, 747 F.3d 929, 933 (7th Cir. 2014). Plaintiff's counsel further notes, however, that courts in the Seventh Circuit have been willing to take judicial notice of the contents of archived webpages on the Wayback Machine. *See, e.g.*, *Arteaga v. United States*, 711 F.3d 828, 834 (7th Cir. 2013); *Galanis v. Starbucks Corp.*, No. 16 C 4705, 2016 WL 6037962 (N.D. Ill. Oct. 14, 2016). Plaintiff's counsel requests that the Court take judicial notice of the archived eBay terms of service for purposes of the Rule to Show Cause. To the extent that the Court requires further authentication, Plaintiff would be able to request an affidavit from the Internet Archive using the procedure set forth at the following URL: https://archive.org/legal.

containing names and addresses was after the Court had already granted permission to serve defendants electronically, and Rule 11 did not require Plaintiff or its representatives to retroactively update prior submissions.

### c. A "test purchase" cannot be deemed a requirement to meet Rule 11 obligations

In open court (as well as in prior filings), Mr. Lockyer has insisted that Plaintiff and Plaintiff's counsel failed to meet their investigative obligations by not conducting a "test purchase" of the products sold by Mr. Lockyer's clients, and by not conducting an "actual inspection." The premise that an investigation cannot be reasonable without the purchase of a product is flawed, because imposing such a requirement on a pre-filing investigation would render a portion of the Lanham Act superfluous.

"It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). The Supreme Court has been "reluctant to treat statutory terms as surplusage in any setting," and that includes the rendering of a provision in a statute as "insignificant." *TRW*, 534 U.S. at 31 (quoting *Duncan*, 533 U.S. at 174).

Subject only to explicit exceptions, the Federal Rules of Civil Procedure, inclusive of Rule 11, are on the same level of hierarchy as any other federal statute. *See Premier Elec. Const. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 364 (7th Cir. 1987) ("Under the Rules Enabling Act, 28 U.S.C. § 2072, the Rules of Civil Procedure have the effect of statutes."). "Though the Rules Enabling Act provides that all previously enacted laws that are 'in conflict with' the Federal Rules of Civil Procedure 'shall be of no further force or effect,' it also expressly provides that the Federal Rules 'shall not abridge, enlarge or modify any substantive right.'"

*Henderson v. United States*, 517 U.S. 654, 676 (1996) (THOMAS, J., *dissenting*) (quoting 28 U.S.C. § 2072(b)). Thus, while the Lanham Act is not more important than the Federal Rules of Civil Procedure in the aggregate, the reverse is also true. In fact, as part of the requirements for complying with Rule 11, a litigant and attorney must truthfully represent to the best of their knowledge that their legal contentions are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." FED. R. CIV. P. 11(b)(2) (emphasis added). Rule 11 is therefore deferential to existing law, including substantive provisions of federal statutes.

Prohibited activity under the Lanham Act includes the "offering for sale" or "advertising" of counterfeit products. 15 U.S.C. § 1114(a). Neither of those illegal activities presumes a purchase of the product, because the same provision also specifically prohibits the "sale" or "distribution" of knockoff products. If a "test purchase" was required to meet Rule 11 obligations, then that would subsume the Lanham Act's prohibition of the offering for sale, as well as advertising, of inauthentic goods, because every reasonable investigation would have to result in a sale or distribution. The Lanham Act language pertaining to the prohibition of offers and advertising would be rendered redundant. That cannot be the rule.

IV. **PROPRIETY OF ELECTRONIC SERVICE OF PROCESS**

As discussed above, Plaintiff and Plaintiff's representatives properly abided by their Rule 11 obligations to perform a reasonable pre-filing investigation, including with respect to attempts to identify defendants' physical addresses, if any were available. It is worth noting, however, that at least some courts in this District do not actually require such level of investigation. *See, e.g.*, *Roadget Bus. Pte. Ltd. v. Individuals, et al.*, No. 23 C 17036, 2024 WL 1858592, at \*5 (N.D. Ill. Apr. 29, 2024) ("While some courts require plaintiffs to exercise reasonable diligence to

find defendants' addresses before allowing plaintiffs to effectuate service by email, it is not required.") (emphasis added); *Oakley, Inc. v. P'ships, et al.*, No. 20-CV-05049, 2021 WL 2894166, at *4 (N.D. Ill. July 9, 2021) (finding that while the plaintiffs did not exercise reasonable diligence to find defendants' addresses, service by email was still proper under Rule 4(f)(3)). Thus, while Plaintiff maintains that all investigation was reasonable, even if the Court finds to the contrary, inadequacy of the investigation would not serve to automatically obviate the validity of service.

In arguing that Plaintiff and Plaintiff's counsel did not perform a reasonable pre-filing investigation, Mr. Lockyer makes much of the question of electronic service of process with respect to U.S.-based defendants, and that Rule 4(f) is reserved solely for foreign defendants. No doubt, Rule 4(f) is indeed for service of foreign individuals, but "Rule 4 does not create a hierarchy or priority between the different methodologies for service." *Toliver v. Indiana Online Learning Options, Inc.*, No. 1:23-CV-00630-JMS-MG, 2023 WL 4405470, at *2 (S.D. Ind. July 7, 2023). "[T]he service rules exist primarily to ensure that due process requirements are met," and courts are "reluctant to elevate form over substance in these matters." *Wachovia Sec., LLC v. Loop Corp.*, No. 05 CV 3788, 2011 WL 10604426, at *1 (N.D. Ill. May 9, 2011) (internal quotation marks omitted). In turn, due process requires that service of notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The key question, therefore, is not whether Ms. Padilla is a U.S. citizen/resident, nor whether Plaintiff's motion for electronic service of process was styled as a motion under Rule 4(f), but rather whether Ms. Padilla was given the benefit of due process (and

whether Plaintiff's representatives were justified in alleging that electronic service of process would suffice for that purpose when filing the Electronic Service Motion).[5]

Conservatively assuming that Ms. Padilla has truthfully represented that she was at all relevant times in California, such that Rule 4(f) would not apply for valid service of process, Plaintiff can still have effected service properly under other provisions of Rule 4. Specifically, Rule 4(e)(1) permits service upon U.S. residents in accordance with the state law of "where service is made." The state law of California allows for substitute service by publication, and service in "a manner which is reasonably calculated to give actual notice to the party to be served and that proof of such service be made as prescribed by the court." CAL. CIV. PROC. CODE § 413.30. This includes email. *THC-Orange Cnty. Inc. v. Valdez*, No. 17-CV-01911-LB, 2017 WL 3115171, at *3 (N.D. Cal. July 21, 2017) (collecting cases and noting that "Under section 413.30 (in Article 4), courts in this district have authorized service by email."); *see also Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752, at *3 (N.D. Cal. Mar. 27, 2012) (authorizing email service on domestic defendants under Rule 4(e) and California law because service by email was "reasonably calculated to give actual notice to the Domestic Defendants" because they were "engaged in internet-based commercial activities and rely on email as a means of communication."); *Balsam v. Angeles Tech. Inc.*, No. C06-04114 JFHRL, 2007 WL 2070297, at *3 (N.D. Cal. July 17, 2007) (authorizing email service under Rule 4(e) and California law because it was "reasonably calculated to give [defendants] notice of the action").

The substance here is that Ms. Padilla is an ecommerce merchant who has an online storefront on eBay that, by her choice, does not make it possible to ascertain her identity or her address. The marketplace itself is relevant, as eBay, unlike some other marketplaces, did not (and

---

[5] The same arguments apply with respect to Mr. Dermarderosian, as Plaintiff has already stated in Plaintiff's response to Mr. Dermarderosian's motion to set aside default judgment. [*See* Dkt. 109 at 4–6].

11

still does not) require, nor proscribe, the merchant to make the merchant's physical address publicly available on the seller's listing. *See Hangzhou Chic Intelligent Tech. Co. v. P'ships, et al.*, No. 20 C 4806, 2021 WL 1222783, at *2 (N.D. Ill. Apr. 1, 2021) (noting that in September 2020 Amazon instituted a requirement for sellers to provide a physical address on the U.S. version of the sellers' sites). As of the time when Plaintiff's investigation was performed, when someone clicked on "itsyours4keeps" to look for more information about the eBay storefront, the information that was publicly available did not include any name – of a person or a company – nor did it provide any physical address. By itself, the absence of an address on the storefront at the time of the investigation and electronic service of process is sufficient to determine the question. *See Roadget*, 2024 WL 1858592, at *5 (noting that moving defendants' evidence showing presence of the physical address at the time of the motion practice could not rebut plaintiff's "assertion that their physical addresses were not available at the time [plaintiff] sought service of process by email"); *Hangzhou Chic*, 2021 WL 1222783, at *2 (finding email service appropriate in part because "it [was] not clear that [moving defendants] provided addresses on their Amazon websites at the time Plaintiffs filed their motion for email service"). Plaintiff's representatives nevertheless took further steps through searches of Google and the USPTO's online database. [*See* Ge Decl., ¶ 6].

What Plaintiff's representatives did know for sure, however, is that the owner of the storefront had accepted eBay's terms of service. Plaintiff's representatives also knew that there was a way to communicate with the seller online through eBay's communication portal (*i.e.*, no direct email address was provided at the time). As discussed above, it *would not* have been reasonable to expect Plaintiff's representatives to reach out to Ms. Padilla via eBay's communication portal to request a name or an address directly from Ms. Padilla. It *was* reasonable

12

for the investigators to expect Ms. Padilla to monitor the inbox that she had provided as a point of contact to eBay, regardless of whether she was based abroad or within the United States. Given the circumstances, service of process by email was reasonably calculated to apprise Ms. Padilla of the proceedings in this case, and to give her a reasonable opportunity to respond – as many defendants indeed did, reaching out to Plaintiff's counsel after receiving the very same emails that were sent to Ms. Padilla. Regardless of the country where a defendant purports to reside, electronic service indeed is an effective method of providing due process for ecommerce merchants, especially when legal names and physical addresses cannot reasonably be discovered otherwise.

V.    **CONCLUSION**

For the reasons set forth above, the pre-filing investigation conducted by Plaintiff and its representatives with respect to all defendants (and specifically including Mr. Lockyer's clients Ms. Padilla and Mr. Dermarderosian) prior to filing the Electronic Service Motion was reasonable under the circumstances.

Dated: July 28, 2025

*/s/ Ilya G. Zlatkin*
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
ilya@zce.law
(312) 809-8022

*Counsel for Plaintiff*

13